CITY OF SAGINAW *v.* SECOND NATIONAL BANK.

TAXATION—MINING LEASES ON LAND OUTSIDE STATE NOT TAXABLE—INCORPOREAL HEREDITAMENTS.

Leases of mineral rights in real property located in the State of Minnesota and the unaccrued installments to grow due on said leases are incorporeal hereditaments and a part of the real estate, and are not subject to taxation in Michigan.

Case-made from Saginaw; Snow (Ernest A.), J. Submitted January 6, 1921. (Docket No. 47.) Decided March 30, 1921.

Case-made before judgment under 3 Comp. Laws 1915, § 12754, by the city of Saginaw against the Second National Bank of Saginaw, executor of the last will of Wellington R. Burt, deceased, for the amount of a tax assessment. Judgment for plaintiff for less than amount claimed. It brings error. Affirmed.

*Bird J. Vincent*, City Attorney (*Frank A. Rockwith*, of counsel), for appellant.

*Humphrey, Grant & Henry, John F. O'Keefe* and *James B. Peter*, for appellee.

STONE, J. A case was made before judgment in the circuit court for the county of Saginaw, upon agreed facts, in accordance with the provisions of section 18 of chapter 20 of the judicature act (3 Comp. Laws 1915, § 12754). Upon the judgment entered in the circuit court, the plaintiff has brought error. The facts, agreed upon in the case-made, show that Wellington R. Burt was an inhabitant and resident of the city of Saginaw, Michigan; that he died there on the 2d day of March, 1919, testate, and had appointed the defendant executor in his will, and that defendant has duly qualified as such executor. That in April, 1919, after the death of Mr. Burt, the defendant made and filed with the city assessor of Saginaw a general tax statement—known in the record as Exhibit A—and from this statement it appears that the personal property of said estate subject to assessment for the year 1919 amounted only to $359,224.76. That notwithstanding this statement, the city of Saginaw assessed said estate on personal property, for the year 1919, the sum of $5,000,000. That the defendant bank ex-

hausted all of the remedies provided by law to have this assessment corrected, but without avail. That the taxes assessed for the year 1919 against said defendant, as the representative of said estate, amounted to $160,400. That in December, 1919, the bank paid to the city treasurer $11,794.50, being the amount which it admitted it owed the city, based on the $359,-224.76, disclosed in the general tax statement, and refused to pay any further sum.

The assessment of $5,000,000 for the year 1919, it is admitted, was made up as follows:

| | |
|---|---|
| Personal property, tax statement.......... | $359,224.76 |
| Foreign bonds .......................... | 50,000.00 |
| Mining leases (Exhibits F and G)......... | 4,590,775.24 |
| Making a total of.................... | $5,000,000.00 |

Upon the trial below the court held that there was no law in force at the time the specific tax was paid on those bonds, authorizing the payment of a specific tax upon foreign bonds, exempting them from general taxation, and entered a judgment in favor of the plaintiff and against the defendant for the sum of $1,780.44, the amount of the 1919 tax, interest and collection fees, on the foreign bonds, set forth in the case-made.

The defendant has not appealed from this judgment, and, therefore, the question of the tax on the foreign bonds described in the case-made is not involved in the appeal. The only question involved and raised by the assignments of error relates to the leases, Exhibits F and G, and as to these the trial court found that they are in name, and, in fact, leases of real property located in the State of Minnesota, and that the unaccrued installments to grow due on each of said leases are in fact rents,—the compensation the lessee pays the lessor for the use and occupation of the real estate under said leases; and that the amounts stipulated to be paid by the lessees are incorporeal hereditaments, and a part of the real estate, and are not

subject to taxation in the State of Michigan,—and entered judgment on this branch of the case in favor of defendant. A reference to Exhibit F shows that it is a lease made January 1, 1900, between Mr. Burt and the Lake Superior Consolidated Iron Mines, a corporation, of certain lands located in the State of Minnesota. This lease runs, unless canceled, for a period of 50 years from that date. The lands are particularly described in the lease. Mr. Burt is described as the lessor, and the said corporation as lessee, and the entire premises are demised to the lessee for the purpose of exploring for, mining, taking out and shipping therefrom the merchantable iron ore (as well as other minerals, as therein provided for) which then was or might thereafter be found on, in or under the said lands, with the right to the lessee to construct all buildings, and to make all excavations, openings, ditches, drains, railroads, wagon roads and all other improvements which were, or might become, necessary or suitable for the mining, or removing of the iron ore therefrom and the carrying on of mining operations thereon; and the right to cut and use all the timber, other than pine timber, which might be upon the said lands, free and without charge, so far as might become necessary for fuel, or in the construction of buildings required in the operation of any mine upon the said lands, and for drains, tramways, supports or shafts on or within any such mine, or in connecting the same with any lines of railway over which the said ore might be transported. The term "merchantable ore" as used in the lease shall be taken to mean such ore as shall be merchantable from time to time as the work of mining progresses.

The lessee covenants to pay to the lessor a royalty on all iron ore mined and shipped from the said lands while the lease shall remain in force, at the rate of 25

213—Mich.—38.

cents for each gross ton. The royalty is due and payable on the 10th days of April, July, October and January, in each calendar year. The payment on each quarter day shall be for the full amount of ore mined and shipped from the said lands during the three months immediately preceding the first day of the month in which the payment shall become due.

The lessee further covenanted that in each year during the existence of the lease, it would mine and ship from the said lands at least 200,000 gross tons of iron ore as an agreed minimum output, or, in case in any one or more of such years the lessee shall not actually ship from the demised premises the full quantity of said agreed minimum output, the lessee would nevertheless pay to the lessor advance royalty to be treated and considered as ground rent in addition to the royalty paid for iron ore actually shipped during that year such sum as should, together with the amount paid as royalty for iron ore actually shipped during the said year, amount to $50,000.

Said advance royalties or ground rent were to be paid quarterly, at the time and in the manner in said lease provided for the payment of royalties for ore actually shipped.

The seventh paragraph of said lease is as follows:

. "*Seventh:* It is mutually covenanted between the parties and this lease is granted and accepted upon conditions, that the lessee shall have the right at any time upon thirty days' notice to terminate this agreement and lease, by giving written notice in the manner hereinafter provided to the lessors, their heirs, executors, administrators or assigns, who will in such case acknowledge in writing the receipt of such notice; and this lease shall terminate thirty days after the giving of such notice, whether the same shall be acknowledged or not.

"All arrearages and sums, including taxes, which shall be due and payable under this lease up to the time of its termination as set forth in the said notice, must

and will be paid by the lessee within thirty days after such termination; and the lessee upon such termination must and will forthwith execute and record in the office of the register of deeds of St. Louis county, Minnesota, a formal relinquishment of such lease.

"Said notice of termination of this lease may be given by registered letter mailed from any postoffice in the United States, postage prepaid, and addressed to the lessors or their heirs, executors, administrators, or assigns, at their respective last known places of residence.

"And it is further agreed that the lessee shall have the right to assign this lease or to contract with others to work any mine or mines which now are or hereafter may be discovered upon the said lands, or to subcontract or sub-let the same at its option with the same rights and privileges as are herein granted to the lessee, it being expressly understood that any such assignment, contract, sub-contract or sub-lease shall not operate as a release or discharge of the lessee from the performance of the conditions of this lease unless the lessors shall in writing consent thereto."

The eighth paragraph is as follows:

"*Eighth*: This lease is granted and accepted upon condition that if the royalty hereby reserved or the advance royalty or ground rent hereby provided for and agreed to be paid or any part thereof be and remain unpaid after the days and times above specified, and if the same shall remain in default for a period of sixty days, or in case the lessee shall fail to keep any of the covenants or conditions herein expressed to be kept and performed by it, and such failure shall continue for sixty days after the receipt by it of written notice from the lessors specifying the default, neglect and failure complained of, then and from thenceforth and in either of the said events, but not otherwise, it shall be lawful for the lessors at their option to terminate this lease and to take possession of the said leased premises with or without any previous process whatever, to re-enter and have and possess the same as fully as if no lease had been given to the lessee, and the said lessee and all parties claiming under it shall be wholly excluded therefrom, and this lease shall be-

come and be wholly void and at an end subject to the provisions of article ninth hereof; and the lessors reserve and at all times shall have, possess and hold a lien for all unpaid balances due hereunder upon all ore mined upon the said premises and upon all improvements made upon the said premises by the lessee."

In the eleventh paragraph of said lease it was provided that all covenants, conditions, and provisions should run with the lands.

Exhibit G is another lease made by Mr. Burt in July, 1902, as lessor, with the Oliver Iron Mining Company as lessee, and, subject to the right of termination, runs for a period of 50 years. This lease is in substantially the same form, and contains the same conditions as the lease Exhibit F. The lands are located in Minnesota, and paragraphs 7 and 8 of the lease are identical with Exhibit F.

All of the ore referred to in these leases was in place in the lands, and was assessed as real property in the State of Minnesota, and this fact is admitted. In the statement of agreed facts, the following appears:

"That in assessing said lands for taxation in the State of Minnesota the assessing authorities determine and set down separately, the assessable value of the ore exclusive of the land, and the assessable value of the land exclusive of the ore, and the aggregate of the two is then assessed against the tract of land."

Counsel for plaintiff and appellant in their brief say that the single question presented for adjudication is this:

"Are the documents, Exhibits F and G, together with the unaccrued royalties therein reserved, and all of the estate, rights, titles and interests specified, reserved, included in and represented thereby, properly and legally subject to taxation under the laws of the State of Michigan?"

We have here at considerable length set forth the substance of the leases in evidence in this case, to show

that the question involved is identical with the question involved and considered by this court in the case of *In re Rust's Estate, ante,* 138.

We are unable to distinguish the cases, and in our opinion the *Rust Case* controls and governs the instant case. The judgment of the circuit court is therefore affirmed.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.