## PEOPLE *v.* BLANKENSHIP.

1. LICENSES—PURPOSE OF THE BLUE SKY LAW.

   The purpose of the so-called blue sky law is to prevent fraud in the issuance of stocks, bonds and other securities sold or offered for sale within the State (2 Comp. Laws 1929, § 9769 *et seq.*, as last amended by Act No. 37, Pub. Acts 1935).

2. STATUTES—CONSTRUCTION—BLUE SKY LAW.

   Provisions of the so-called blue sky law are to be construed liberally to the end that fraud upon purchasers of securities may be prevented (2 Comp. Laws 1929, § 9771, as amended by Act No. 37, Pub. Acts 1935).

3. CONTRACTS—PURPOSE OF BLUE SKY LAW.

   Purpose of so-called blue sky law is to prevent an offering to the public of all forms of securities and investment contracts without first giving the corporation and securities commission an opportunity to investigate the venture and determine whether sound policy justifies permitting the promoters to offer for sale to the investing public the kind and character of securities proposed; also, to prevent exploitation of the public by the unscrupulous salesman (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

4. Deeds—Mines and Minerals—Royalties.

The legal appearance and technical phraseology of deeds conveying an undivided share in royalty in lessor interest of oil and gas rentals need not obscure their intended purpose (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

5. Mines and Minerals—Oil and Gas—Royalties.

A royalty reserved under an oil and gas lease is a share of the product or profits reserved by the owner for permitting another to develop his property.

6. Licenses—Deeds of Undivided Interest in Oil and Gas Royalties—Intent.

Sale of deeds of undivided 1/80 and 6/200 parts of the 1/8 royalty reserved by owner of oil and gas leases but barring grantee from sharing in money rentals paid to extend term of the leases, prior to development under the lease, *held*, intended to constitute an investment contract, rather than a conveyance of an interest in land; hence, were subject to the so-called blue sky law and their sale without having been accepted for filing by the corporation and securities commission constituted a violation of the law (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

7. Criminal Law—Finding of Court—Salesman—Blue Sky Law —Licenses.

Evidence in prosecution for violation of so-called blue sky law *held*, sufficient to sustain finding of trial court, sitting without a jury, that defendant was a "salesman" within the meaning of the statute requiring acceptance of securities for filing by the corporation and securities commission and that vendors or agents be licensed thereunder (2 Comp. Laws 1929, § 9769 *et seq.*, as amended).

Appeal from Berrien; Evans (Fremont), J. Submitted January 14, 1943. (Docket No. 94, Calendar No. 41,970.) Decided April 6, 1943.

James F. Blankenship was convicted of a violation of the blue sky law. Affirmed.

*Charles W. Gore,* for appellant.

*Herbert J. Rushton,* Attorney General, and *Robert P. Small,* Prosecuting Attorney, for the people.

NORTH, J. Defendant appeals from his conviction for selling certain mineral deeds, held to be "securities," in violation of the so-called "blue sky law" (2 Comp. Laws 1929, § 9769 *et seq.,* as amended by Acts Nos. 229 and 255, Pub. Acts 1931, and by Act No. 37, Pub. Acts 1935 [Stat. Ann. § 19.741 *et seq.*]). (Later amended by Act No. 167, Pub. Acts 1937, and by Act No. 165, Pub. Acts 1941.)

The information charged that between July 10th and August 12, 1936, without being licensed by the Michigan corporation and securities commission as a dealer, broker, or salesman, defendant sold one Clara A. Price "certain securities described as mineral deeds," which had not been accepted for filing by the commission, and also charged defendant with engaging in the business of dealing in "securities, to-wit mineral deeds," not accepted for filing by the commission, without procuring a license therefor.

The facts were stipulated in part. It is admitted that defendant sold the mineral deeds in question and also that he was not licensed as a dealer or salesman. Defendant, who was the only witness called, was a stockholder and president of the Prima Oil Company, a Michigan corporation. On July 21, 1936, for a valuable consideration, he sold to Clara A. Price two so-called mineral deeds, executed by the Prima Oil Company, which deeds purported to sell and convey certain interests described as follows:

"An undivided 1/80 or a one royalty acre interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the

following described land situated in Midland county, * * * containing 80 acres more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of the Pure Oil Company, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 1/80 of all of the oil royalty; and gas rental or royalty due and to be paid under the terms of said lease insofar as it covers the lands above described.

"It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in the event that the above-described lease for any reason becomes cancelled or forfeited, then and in that event an undivided 1/80 of the lease interests and all future rentals on said land for oil, gas and other mineral privileges shall be owned by the said grantee owning 1/80 of all oil, gas and other minerals in and under said lands, together with 1/80 interest in all future events."

The record also shows that on August 12, 1936, defendant sold to Clara A. Price a so-called mineral deed executed by the Prima Oil Company purporting to convey "an undivided 6/200 of 1/8 royalty interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land (200 acres) situated in Montcalm county." Such deed was otherwise in substantially the same form as the two mineral deeds of July 21, 1936.

The three above-mentioned mineral deeds had not been accepted for filing by the Michigan corporation and securities commission, and at the time of such

sales defendant was not licensed as a dealer, broker or salesman (2 Comp. Laws 1929, § 9769 *et seq.,* as amended by Act No. 37, Pub. Acts 1935).

The case was submitted to the trial court sitting without a jury. The court's opinion stated, in part:

"The only issues presented are two questions of law: (1) whether or not the 'mineral deeds' constitute 'securities,' within the meaning of the statute, which must be 'filed for acceptance,' and for the sale of which the individual making the sale must be licensed; and (2) whether or not respondent was a 'dealer, broker or salesman.' * * *

"In the instant case, we are confronted with the following situation: the owner of the fee to the land has given a lease upon the entire acreage for mineral development, the payment to be made in royalties. The owner of the land then executes 'mineral deeds' designed to convey his right to share in those royalties in the fractional proportion of each mineral deed. Grantor's interest, as lessor, in the master lease is split into undivided fractional parts, in one case into eightieths and in another into two-hundredths parts. The sole practical value of the mineral deeds here given is dependent upon royalties to be earned under the master lease, royalties to be received only if, when and as the mineral in question is found to exist, separated from the ground and marketed. Those fractional interests are sold to the investing public.

"I am of the opinion that regardless of how the transaction is disguised or dressed up, and regardless of the particular form and phraseology of the instrument which is sold to the investing public, they are, nevertheless, really securities. A rose by any other name is still a rose. * * *

"Proceeding upon the finding already made that the mineral deeds were securities, I am of opinion that the organization of this corporation and its domination by respondent and the selling of these

mineral deeds by him was but a subterfuge to avoid compliance with the act and that the true character of the entire situation must be recognized and that respondent must be held in law to have been a salesman within the meaning of the statute selling securities for the corporation and, therefore, subject to the statutory regulation applicable to salesmen of securities.''

On December 30, 1941, defendant was found guilty by the trial court and sentenced to prison for a period of 1 to 2 years. His motion for a new trial was denied, and, having obtained leave, he appeals.

The questions presented for review on this appeal are: (1) were the mineral deeds sold by defendant ''securities'' under the blue sky law, and (2) was defendant a dealer, broker or salesman required to be licensed under such law?

The purpose of the blue sky law is stated in its title, 2 Comp. Laws 1929, § 9769 *et seq.,* as amended by Act No. 37, Pub. Acts 1935, as follows:

''An act to prevent fraud, deception and imposition in the issuance, trade, purchase, exchange, sale or disposition of stocks, bonds and other securities sold, traded, purchased, exchanged or offered for sale, trade, purchase or exchange within the State of Michigan.''

Section 9771, 2 Comp. Laws 1929, as amended by Act No. 37, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9771, Stat. Ann. § 19.743), states the following rule of construction:

''The provisions of this act shall be liberally construed to the end that the purposes thereof may be accomplished by preventing fraud, deception and imposition on purchasers of securities.''

Section 9775, 2 Comp. Laws 1929 (Stat. Ann. § 19.747), provides:

"No security shall be sold to any person within the State of Michigan unless and until the issue of securities, of which such security to be sold is a part, shall have been accepted for filing by the commission, excepting as the security itself or the transaction therein is exempted by sections four and five of this act as the case may be."

The term "security" is defined in 2 Comp. Laws 1929, § 9770 (c), as amended by Act No. 37, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9770 [c], Stat. Ann. § 19.742 [c]), as follows:

"The term 'security' or 'securities' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, preorganization certificate or preorganization subscription, transferable certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest, units and/or shares in an oil, gas, or mining lease, oil or gas well, collateral trust certificate, any transferable share, investment contract, or beneficial interest in or title to property or profits, or any other instrument commonly known as security."

In the case of *People* v. *Sowall*, 279 Mich. 261, 265, we said:

It is the clear purpose of Act No. 220, Pub. Acts 1923, as amended (2 Comp. Laws 1929, § 9769 *et seq.* [blue sky law]), to prevent an offering to the public of all forms of securities and investment contracts without first giving the commission an opportunity to investigate the venture, and determine whether sound policy justifies permitting the promoters to offer for sale to the investing public, the kind and character of securities proposed; also, to prevent exploitation of the public by the unscrupulous salesman."

To determine whether or not the mineral deeds in question were securities, we must look through

such rather ingenious device of conveyance and, in the light of the circumstances surrounding their execution and sale, ascertain the substance of the transaction and the real intent and purpose of the parties. The legal appearance and technical phraseology of the mineral deeds should not be permitted to obscure their intended purpose.

See *People* v. *Sowall, supra; State* v. *Pullen,* 58 R. I. 294 (192 Atl. 473) ; *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. (2d) 637 (52 Pac. [2d] 237) ; *State* v. *Ogden,* 154 Minn. 425 (191 N. W. 916).

It appears that previous to the sale of the mineral deeds the Prima Oil Company had executed oil and gas leases on the lands described in such deeds to other companies or persons, reserving to itself an owner's royalty. A royalty reserved under an oil and gas lease has been defined as follows:

" 'A share of the product or profits reserved by the owner for permitting another to develop his property.' " Glassmire, Oil and Gas Royalties (2d Ed.), p. 19.

It appears further that the Prima Oil Company divided its reserved royalty into undivided fractional parts and that certain of such parts were assigned and transferred by the mineral deeds in question. Each of the two deeds dated July 21, 1936, purported to assign and transfer to Clara A. Price, grantee, "an undivided 1/80 or a one royalty acre interest." The deed of August 12, 1936, purported to assign and transfer "an undivided 6/200 of 1/8 royalty interest."

Such mineral deeds conveyed to grantee Price only an assignable and transferrable right to an undivided fractional part of the royalty reserved by the Prima Oil Company under existing oil and gas

leases. If, as, and when the lands described in the leases were developed by the original lessee or assigns, and oil, gas or minerals were produced in paying quantities, grantee Price would be entitled to an undivided fractional part of the royalty reserved by the owner in such products. Her purchase of such mineral deeds was a purely speculative investment.

It is rather significant to note that the mineral deeds in question provided ''that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said grantee.'' Such provision barring the grantee from an interest in future rentals somewhat negatives defendant's contention that the deeds were only intended to convey an interest in land and were not securities.

In *State* v. *Pullen, supra,* the court considered a mineral deed granting a fractional part of the royalty interest reserved by a lessor. In construing a statute substantially similar to the above-quoted provisions of our blue sky law (R. I. Gen. Laws 1923, chap. 273, § 1 *et seq.*), the court said, p. 303:

''It is difficult to read these documents and not come to the conclusion that, notwithstanding the legal verbiage in which the transaction is clothed by such documents, they are, nevertheless, securities evidencing an investment by the purchaser in a share of oil produced and brought to the surface by the lessee of the land described therein. * * * Really and actually behind the form of a conveyance of an interest in land set out in these documents is an investment contract, and it is peculiarly the kind of an investment contract which lends itself readily to the perpetuation of the evil which the securities act is designed to eradicate.''

See *Freeze* v. *Smith,* 254 Mich. 386; *State* v. *Ogden, supra;* 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 40 A. L. R. 1014; 54 A. L. R. 498.

Examination of the mineral deeds in question and the circumstances surrounding their execution and sale indicates that they were designed for investment purposes and not merely for the purpose of conveying an interest in land. These mineral deeds evidenced a purely speculative investment against which the blue sky law was intended to protect.

The cases of *Palms* v. *Palms,* 68 Mich. 355; *In re Rust's Estate,* 213 Mich. 138; *City of Saginaw* v. *Second National Bank,* 213 Mich. 590, cited by defendant, are distinguishable from the present case and do not sustain his contention that the mineral deeds in question were not securities within the meaning of the blue sky law.

We conclude that the mineral deeds sold by defendant constituted securities within the meaning of the blue sky law and that his sale of the deeds, without their having been accepted for filing by the commission, violated such law. His activities relative to sales of these securities are not too conclusively disclosed by the testimony. However, we find in the record sufficient testimony to sustain the conclusion of the trial court that defendant was a "salesman" within the meaning of the statute. It may be noted that in his brief appellant does not seriously controvert this phase of the appeal.

Defendant's conviction is affirmed and the case remanded for execution of the sentence.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.