PEOPLE v BRECKENRIDGE

1. False Pretenses—Indictment and Information—Time Variances—Prior Events—Prejudice.

Time is not of the essence of the offense of obtaining money by means of false pretenses and a prosecutor may introduce evidence of events prior to the time of the charged crime specified in an indictment, particularly where the defendant does not allege prejudice and where the evidence of prior events is essential to an understanding of the crime charged.

2. False Pretenses—Indictment and Information—Amendments—Time Variances—Proofs.

It is not error to permit the amendment of an information during trial to enlarge the time period during which the crime of obtaining money by false pretenses occurred; the prosecution is not required to set forth in the information the false pretenses by which the offense was accomplished, and proof of the crime is not restricted to the exact transaction as it took place between the complaining witness and the accused.

3. False Pretenses—Indictment and Information—Continuances—Evidence—Prejudice—Appeal and Error.

Failure to ask for a continuance in a prosecution for obtaining money by false pretenses, where the defendant is entitled to one, leads the Court of Appeals to presume that the defendant was not prejudiced by the failure of the prosecution to indicate at an earlier time that it was going to introduce evidence of events occurring prior to the time specified in the indictment.

4. False Pretenses—Instructions to Jury—Evidence—Material Misrepresentations—Harmless Error.

An instruction on "continuous misrepresentation" in a prosecution for obtaining money by false pretenses, which defendant

References for Points in Headnotes
[1–3, 5] 32 Am Jur 2d, False Pretenses §§ 21, 61.
[4] 32 Am Jur 2d, False Pretenses § 72.
[6] 32 Am Jur 2d, False Pretenses § 49 *et seq.*
[7, 9, 10] 69 Am Jur 2d, Securities Regulation—State § 10.
[8] 69 Am Jur 2d, Securities Regulation—State § 38.

asserts is a non-existent doctrine, is harmless error even if there is no such doctrine where there was considerable evidence of material misrepresentations over an extended period of time and sufficient evidence of defendant's misrepresentations during the time specified in the indictment to render any error harmless.

5. FALSE PRETENSES—INDICTMENT AND INFORMATION—EVIDENCE—
   ADMISSIBILITY OF PRIOR EVENTS—STATUTES.

   A statute permits evidence of events occurring within a 6 month period following the time stated in an information or indictment to be admitted in a trial for obtaining money by false pretenses; there is no limitation in the statute on the admission of events occurring prior to the time stated in the information or indictment and no authority exists which supports the proposition that the statute prohibits the admission of such evidence (MCLA 767.60; MSA 28.1000).

6. FALSE PRETENSES—ELEMENTS—RELIANCE.

   Failure to establish the element of reliance in a trial for obtaining money by false pretenses is reversible error.

7. STATUTES—UNIFORM SECURITIES ACT—SECURITY TRANSACTIONS—
   COURTS—COURT RESPONSIBILITY.

   The Uniform Securities Act makes unlawful various acts in connection with the offer, sale or purchase of any security and whether or not a particular transaction comes within the purview of the act depends upon the language of the statute and the real nature of the transaction; it is the court's responsibility to ascertain the substance of the transaction and the real intent and purpose of the parties (MCLA 451.501, 451.809; MSA 19.776[101], 19.776[409]).

8. STATUTES—SECURITY LAWS—STOCKHOLDERS AND PROMOTERS—
   FRAUDS AND IMPOSITIONS—HAZARDOUS UNDERTAKINGS.

   The purpose of securities laws, in general, is to prevent stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings and to protect credulous and incompetent persons from their own inclinations to speculate in hazardous enterprises.

9. STATUTES—UNIFORM SECURITIES ACT—BUSINESS ENTERPRISES—
   VENTURE CAPITAL—SECURITY TRANSACTIONS.

   The salient feature of securities sales under the Uniform Securities Act is the public solicitation of venture capital to be used in a business enterprise; subjection of the investor's money to the risks of an enterprise over which she or he has no manage-

rial control is the basic economic reality of a security transaction as defined in the act.

10. STATUTES—UNIFORM SECURITIES ACT—ECONOMIC REALITIES—
 LOANS—PURCHASE OF SECURITIES—STATUTORY PROTECTION OF
 INVESTORS.

 Security statutes must turn on the economic realities underlying a transaction and where the underlying realities establish that a loan was made rather than the offering, selling, or purchase of securities there is no violation of the Uniform Securities Act, which was intended to protect investors, not persons engaged in commercial loan transactions.

Appeal from Kent, John T. Letts, J. Submitted November 1, 1977, at Grand Rapids. (Docket No. 28463.) Decided January 24, 1978. Leave to appeal denied, 402 Mich 915.

Don Breckenridge was convicted of obtaining money by false pretenses and violation of the Uniform Securities Act. Defendant appeals. Affirmed as to Count I, reversed as to Count II, and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *Carol S. Irons,* Assistant Prosecuting Attorney, for the people.

*Cholette, Perkins & Buchanan* (by *Robert A. Benson),* for defendant.

Before: R. M. MAHER, P. J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

PER CURIAM. On January 29, 1976, a jury convicted Don Breckenridge of obtaining money by false pretenses, MCLA 750.218; MSA 28.415, and of violating the Uniform Securities Act, MCLA 451.501, 451.809; MSA 19.776(101), 19.776(409). De- .

fendant was sentenced to a term of imprisonment for not less than 3-1/2 nor more than 10 years.

Defendant Breckenridge was a divisional manager for Investor's Diversified Services (IDS), a company which sells mutual funds, saving certificates, tax exempt bonds and insurance.

In January or February of 1973, defendant approached Dale Discher, vice-president and treasurer of Amway Corporation, about obtaining loans, apparently for construction.

Discher testified that by an arrangement made in February, 1973, Amway Corporation was to loan money to Mr. Breckenridge against 30-day promissory notes which would be secured by shares in defendant's Investor's Stock Fund Account worth not less than 140% of the loan amount. An assignment of the shares accompanied each note.

As a result of the February, 1973, arrangement, a series of 30-day notes was given by defendant over the next year until, in February, 1974, there were 56 different notes. On February 11, 1974, all the then-outstanding notes were consolidated into one note for $650,000. A security agreement, accompanying the note, provided that defendant Breckenridge granted to Amway a security interest in 41,800 shares of IDS stock.

Also accompanying the note was a document entitled "Funds Change of Name, Ownership or Beneficiary". This document provided that Don Breckenridge did "assign for value received * * * 41,800 shares described above". The issuing company was listed as Investors Stock Fund, Inc. The name of the assignee was not provided. The form stated "ALL STOCK CERTIFICATES MUST BE ATTACHED". No stock certificates were attached.

Three more notes for a total of $200,000 secured

by additional shares in the Investor's Stock Fund Account were given by defendant. The method for exchanging the notes for the loans did not change throughout the period. Kenneth S. Gfeller, an assistant to Discher, delivered checks to defendant and picked up documents prepared in connection with the loan. The notes and accompanying materials were always prepared by Breckenridge.

In May, 1974, defendant resigned his position with IDS, apparently after IDS auditors examined his personal books in his absence. Defendant never held more than 148 shares in his Investor's Stock Fund Account.

Count I of the indictment alleged that on or about the 11th day of February, 1974, and on divers other dates between that date and April 17, 1974, defendant did, with intent to defraud, obtain $850,000 from the Amway Corporation by use of false pretenses.

As to this count, defendant alleges three errors, two of which relate to representations occurring a year before the date of the crime specified in the indictment. Defendant first charges that the trial court erred by instructing the jury that it could consider representations which occurred more than one year before the date of the crime specified in the indictment.

February 11, 1974, the first date cited in the indictment, was the date on which outstanding promissory notes given for loans were consolidated into one note for $650,000. The testimony concerning occurrences prior to February, 1974, was essential to understand and explain the February, 1974 note.

Time is not of the essence of the offense of obtaining money by means of false pretenses. It is therefore perfectly proper to permit an amend-

ment at trial changing the dates to that shown by the testimony. *People v Hoffmann,* 142 Mich 531; 105 NW 838 (1905). Similarly, in *People v Clum,* 213 Mich 651; 182 NW 136 (1921), the Court held, in a prosecution under the blue sky laws, that it was not error to permit an amendment of the information during trial to enlarge the time period during which the charged crime occurred. The holding was based on the fact that time was not of the essence of the offense.

In the present case, following the precedents in *People v Hoffmann, supra,* and *People v Clum, supra,* the court could have permitted the indictment to be amended. There was no amendment, but the omission does not constitute reversible error.

In *People v Winslow,* 39 Mich 505 (1878), defendant was convicted of conspiracy to defraud by false pretenses. The Court stated that it was not necessary, in a case of this sort, to set forth in the information the false pretenses by which the offense was accomplished; nor in the proof of them can the prosecution be restricted to the exact transaction as it took place between the complaining witness and the accused. 39 Mich at 507. It reasonably follows that a prosecutor may introduce evidence of events occurring prior to the time of the charged crime specified in the indictment, particularly when, as in this case, the defendant does not allege prejudice and when the evidence of prior events is essential to an understanding of the crime charged.

Defendant, had he asked for one, would have been entitled to a continuance. See *People v Clum, supra.* His failure to so ask leads us to presume he was not prejudiced by the failure of the prosecution to indicate at an earlier time that it was

going to introduce evidence of events occurring prior to February, 1974.

The judge, wishing to portray for the jury the series of events leading up to the February 11 consolidation, instructed on "continuous misrepresentation", a doctrine defendant asserts is nonexistent. The argument is more semantic than legal.

It cannot be denied that defendant, up until February 11, 1974, and for two months afterwards, continued to misrepresent his position. Even if there is no doctrine of continuous misrepresentation, it was harmless error, if error it was, to use the term. There was considerable evidence in this case of material misrepresentations over an extended period of time. Apart from those misrepresentations, there was sufficient evidence of defendant's misrepresentations during the time specified in the indictment to render any error harmless.

Defendant also contends that MCLA 767.60; MSA 28.1000 prohibits in a trial for obtaining money by false pretenses consideration by the jury of representations which occurred more than one year before the date of the crime specified in the indictment. .

The statute permits evidence of events occurring within a 6-month period following the time stated in the indictment to be admitted in a trial for obtaining money by false pretenses. There is no limitation in the statute on the admission of events occurring prior to the time stated in the indictment. No authority exists which supports the proposition that the statute prohibits the admission of such evidence. We must therefore reject defendant's contention.

Defendant's final claim of error under Count I is that the prosecution failed to establish the element of reliance requisite to the charged crime.

Failure to establish the element of reliance in a trial for obtaining money by false pretenses is reversible error. *People v Wilde,* 42 Mich App 514; 202 NW2d 542 (1972). The record may not support a finding that Discher, the person with whom defendant dealt directly, relied upon defendant's misrepresentations. Kenneth Gfeller, however, was also an agent for Amway, the victim of the alleged crime. Gfeller testified that he reviewed the documents signed by defendant to be assured of their correctness.

The evidence of reliance in this case was sufficient, if believed by the trier of facts, to establish that element. Gfeller testified that he reviewed the documents; the documents declared that defendant owned a large amount of stock which was pledged as collateral for the various loans. The jury could reasonably have inferred that if Gfeller found the documents were not in order, no loan would have been made. The element of reliance was sufficiently established by the evidence.

Count II of the indictment alleged a violation of the Uniform Securities Act, MCLA 451.501, 451.809; MSA 19.776(101), 19.776(409), that in connection with the offer, sale or purchase of securities, the defendant employed a device, scheme or artifice to defraud, make untrue statements of material facts, or engage in an act, practice or course of business which operated as a fraud or deceit upon Amway Corporation, and that he sold securities in the form of promissory notes secured by the pledge of 56,300 shares of stock as collateral.

The Uniform Securities Act makes unlawful various acts in connection with the offer, sale or purchase of any security.

The word "sale" is defined in the Uniform Sales

Act at MCLA 451.801(j)(1); MSA 19.776(401)(j)(1). The word sale does not include "[a]ny bona fide pledge or loan". MCLA 451.801(j)(6)(A); MSA 19.776(401)(j)(6)(A).

Whether or not a particular transaction comes within the purview of a state securities law such as the Uniform Securities Act depends on the langauge of the statute and the real nature of the transaction. *State v Hodge,* 204 Kan 98; 460 P2d 596 (1969). The court must ascertain the substance of the transaction and the real intent and purpose of the parties, looking beyond labels and devices. *People v Blankenship,* 305 Mich 79; 8 NW2d 919 (1943).

Whatever the parties may call it, the nature of the transaction between defendant and Amway strongly suggests a loan was made. Defendant was given money by Amway for his temporary use. Each time defendant obtained money from Amway, he promised to repay that money in 30 days. This was accomplished with a series of promissory notes. Defendant promised to (and did) pay interest; he also purported to give collateral for the money obtained by assigning stock.

The crucial question, then, becomes whether the transaction is within the regulatory purpose of the law. *Sarmento v Arbax Packing Co,* 41 Cal Rptr 869; 231 Cal App 2d 421 (1964). Are the promissory notes of such a character as fairly to fall within the scope of the statute?

We cannot say that the transaction is one intended to be covered by the Uniform Securities Act. The purpose of state securities laws, in general, is to prevent stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings and to protect credulous and incompetent persons

from their own inclinations to speculate in hazardous enterprises. *Meek v State,* 54 Okla Cr 415; 22 P2d 933 (1933).

Mindful of this purpose, a court, in interpreting the Uniform Securities Act, must ascertain whether a party's activities constituted an offer or sale of securities as those terms are defined. *Hardtke v Love Tree Corp,* 386 F Supp 1085 (ED Wis, 1975).

Defendant's activities here were not of such a character as to constitute an offer or sale of securities. The salient feature of securities sales under the Uniform Securities Act is the public solicitation of venture capital to be used in a business enterprise. Subjection of the investor's money to the risks of an enterprise over which she or he has no managerial control is the basic economic reality of a security transaction as defined in the context of the Uniform Securities Act. See *State of Hawaii by its Commissioner of Securities v Hawaii Market Center, Inc,* 52 Hawaii 642; 485 P2d 105 (1971).

Any securities statute must turn on the economic realities underlying a transaction. *United Housing Foundation, Inc, v Forman,* 421 US 837; 95 S Ct 2051; 44 L Ed 2d 621 (1975). The underlying realities of the transaction in this case establish that a loan was made. Breckenridge was not asking Amway to venture risk capital in an organization he was running. He was borrowing money secured by notes, not offering, selling, or purchasing securities.

In interpreting Federal securities acts, pertinent provisions and definitions of which are similar to those presently at issue in the Uniform Securities Act, courts have made a point of distinguishing loans from other transactions.

"The question whether a note constitutes a covered

security depends on whether the note was procured for purposes of speculation or investment or *for purposes of making a commercial loan.* As a matter of policy, this distinction is a valid one. The federal securities laws are designed to protect investors, *not persons engaged in ordinary consumer or commercial loan transactions * * * .* Thus courts have restricted application of the Acts to those notes procured for investment and have excluded notes issued in the context of a commercial loan transaction." *Bronstein v Bronstein,* 407 F Supp 925, 930 (Ed Pa, 1976). (Emphasis supplied.)

The Uniform Security Act adopted by the state of Michigan is likewise intended to protect investors, not persons engaged in commercial loan transactions, as was defendant here.

In *McClure v First National Bank of Lubbock, Texas,* 497 F2d 490 (CA 5, 1974), one of the issues raised was whether a pledge of corporate stock for renewal of a bank loan constituted a sale within the meaning of the Securities Exchange Act of 1934. The court held that the pledge of stock, in the circumstances of the case, did not constitute a sale.

"A commercial bank in accepting a pledge of stock as additional consideration for the extension of an overdue commercial loan does not necessarily affect the securities industry * * * mere acceptance of a stock pledge as collateral in a privately negotiated transaction between borrower and lender does not, of itself, bring within the scope of the federal securities acts a transaction otherwise outside their purview." 497 F2d at 495.

While the interpretation Federal courts have placed upon terms under the Federal securities acts is not binding upon state courts as they interpret the Uniform Securities Act, the similarity of the purpose and provisions of the state and

Federal securities statutes, particularly those purposes and provisions pertinent to the facts at hand, cannot be ignored. Interpretation of one offers valuable guidelines as to the interpretation of the other.

As a matter of law, we find that the transaction between Breckenridge and Amway, in which defendant gave Amway a series of notes secured by shares he did not own in exchange for $850,000, constituted a loan which by definition is exempt from the Uniform Securities Act.

Defendant's conviction as to Count I is affirmed; as to Count II, the conviction is reversed. Remanded for resentencing.