ANSORGE v KELLOGG

Docket No. 86910. Submitted July 29, 1987, at Grand Rapids. Decided
   July 7, 1988. Leave to appeal denied, 431 Mich 910.

The Traverse City Canning Company (TCCC) operated a fruit
   processing and canning business. Plaintiffs, Harry W. Ansorge,
   Julius Bugai, Emily Nash Smith, and others, are commercial
   cherry growers who had business dealings with the TCCC. Typi-
   cally, a grower would deliver his fruit to the TCCC. The grower
   would not receive immediate payment but would receive a
   receipt. Approximately thirty days later, the grower would
   receive a statement indicating the amount owed the grower.
   Often a partial payment was made to the grower at that time.
   Subsequent payments generally were made upon the grower's
   request. Growers commonly left their money in their accounts,
   which were interest-bearing accounts. In 1979, the TCCC suf-
   fered financial losses and concluded that it would be unable to
   make full payments on the growers' accounts. Therefore, in
   October, 1981, the TCCC mailed each grower an account state-
   ment and a promissory note. The issuance of the notes was a
   unilateral act on the part of the TCCC. On February 2, 1982, the
   TCCC petitioned for reorganization under federal bankruptcy
   laws. As a result thereof, the plaintiffs did not receive the
   amounts owed to them by the TCCC. Plaintiffs then brought an
   action in the Grand Traverse Circuit Court against defendants,
   David R. Kellogg, Dorothy J. Kellogg, Ray E. Kellogg and
   Gerald T. Stein, the officers, directors and shareholders of the
   TCCC, seeking to impose personal liability on defendants under
   the Michigan Uniform Securities Act (MUSA), MCL 451.501 et
   seq.; MSA 19.776(101) et seq. The trial court, Charles M.
   Forster, J., issued a decision finding that neither the promis-
   sory notes nor the growers' accounts were securities under the
   MUSA and, therefore, the MUSA was inapplicable. The court
   specifically found that plaintiffs Emily N. Smith and Julius
   Bugai had made bona fide loans to TCCC and that those transac-

REFERENCES

Am Jur 2d, Securities Regulation-State §§ 6, 25 et seq.

What constitutes an "investment contract" within the meaning of
   state Blue Sky Laws. 47 ALR3d 1375.

tions came within an exception to the MUSA found in § 401(j)(6)(A) of the MUSA. Plaintiffs appealed and the defendants cross-appealed.

The Court of Appeals *held:*

1. The trial court properly used the factors enumerated in § 401(l) to determine the investment character of the transaction and properly determined that the notes and accounts did not constitute securities within the meaning of § 401(l).

2. The trial court properly found that plaintiffs Julius Bugai and Emily N. Smith had made bona fide loans to the TCCC and, therefore, the transactions were not security transactions governed by the MUSA.

3. The trial court properly denied an award of attorney fees to defendants pursuant to MCR 2.403.

Affirmed.

1. SECURITIES REGULATION — UNIFORM SECURITIES ACT — JUDICIAL CONSTRUCTION.

The Michigan Uniform Securities Act makes it unlawful for any person to offer or sell any security in the state unless it is registered under the act or the security or transaction is exempted under the act; the purpose of the restriction is to protect the public against fraud and deception in the issuance, sale, exchange or disposition of securities; the act should be broadly construed to effectuate this purpose (MCL 451.701; MSA 19.776[301]).

2. SECURITIES REGULATION — JUDICIAL CONSTRUCTION.

Courts, in interpreting Michigan's security statutes, look beyond the form of the transaction to its substance, paying special attention to the economic realities of the situation; whether a particular transaction is considered a security transaction depends upon the statutory language, the real nature of the transaction, and the real intent and purpose of the parties, ascertained by looking beyond labels and devices.

3. SECURITIES REGULATION — UNIFORM SECURITIES ACT — INVESTMENTS — SECURITIES — LOANS.

The Michigan Uniform Securities Act expressly enumerates factors to be considered in determining the investment character of a transaction; the factors aid a court in distinguishing an investment or securities transaction from a loan transaction; the salient feature of a securities sale under the act is the public solicitation of venture capital to be used in a business enterprise (MCL 451.801[1]; MSA 19.776[401][1]).

4. SECURITIES REGULATION — UNIFORM SECURITIES ACT — OFFER — SALE.

   The terms "offer" and "sale," as defined in the Michigan Uniform Securities Act, specifically exclude "any bona fide loan" from the definition of the terms (MCL 451.801[j][6][A]; MSA 19.776[401][j][6][A]).

*Smith, Johnson, Brandt & Heintz, P.C.* (by *Donald A. Brandt, Louis A. Smith* and *Allen G. Anderson*), for plaintiffs.

*Murchie, Calcutt & Boynton* (by *Harry Calcutt*), for Dorothy J. Kellogg, Ray E. Kellogg and Gerald T. Stein.

*Running, Wise, Wilson, Ford & Phillips* (by *Patrick J. Wilson*), for David R. Kellogg.

Before: CYNAR, P.J., and WEAVER and J. H. HAUSNER,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a Grand Traverse Circuit Court judgment of no cause of action in favor of defendants. Defendants claim a cross-appeal from the same judgment. We affirm.

The Traverse City Canning Company (TCCC), a Michigan corporation, operated a fruit processing and canning business for approximately fifty years. The company went bankrupt in 1982. Defendants are the officers, directors and shareholders of the bankrupt corporation. Plaintiffs are commercial cherry growers who had business dealings with the TCCC over the years.

According to the testimony adduced at trial, a typical plaintiff, upon the harvest of his cherries, would deliver the fruit to the TCCC for processing. The plaintiff did not receive immediate payment

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

for his crops. Instead, the grower received a weigh ticket as a receipt. About thirty days after harvest, the typical plaintiff would receive a statement from the TCCC showing the amount owing to the grower after taxes. The amount owing constituted the balance of the grower's account. Commonly, partial payment was made by the TCCC at that time. Subsequent payments by the TCCC were generally made upon the request of the grower. Growers commonly left their money in their growers' accounts, which were interest-bearing accounts. It was established at trial that these dealings were typical of industry-wide practices.

In 1979, the TCCC suffered significant financial losses due to high interest rates and poor harvest yields. As a result, the TCCC concluded that it would be unable to make full payments on the growers' accounts if same was demanded by the growers. Consequently, in October, 1981, the TCCC mailed to each grower that grower's account statement and a promissory note.

Plaintiffs had not requested the promissory notes; plaintiffs did not negotiate with the TCCC with regard to the terms of the notes. The issuance of the promissory notes was a unilateral act on the part of the TCCC.

Thereafter, on February 2, 1982, the TCCC petitioned for Chapter XI reorganization under federal bankruptcy laws. As a result of the bankruptcy proceedings, plaintiffs did not receive the amounts owed to them by the TCCC. Plaintiffs, therefore, filed the instant action seeking to impose personal liability on defendants under the Michigan Uniform Securities Act (MUSA), MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.*

On July 23, 1985, following a bench trial, the trial court issued a written decision finding that neither the promissory notes nor the growers'

accounts were "securities" under § 401(l) of the MUSA, MCL 451.801(l); MSA 19.776(401)(l), and that, therefore, the MUSA was inapplicable. Moreover, specifically as to the notes issued to Emily Nash Smith and Julius Bugai, the trial court found that those plaintiffs had made bona fide loans to the TCCC; thus, those transactions came within the exception to the MUSA found in § 401(j)(6)(A). On appeal, plaintiffs challenge these findings as clearly erroneous.

We are first asked to determine whether the promissory notes issued by the TCCC and the growers' accounts maintained by the TCCC were "securities" within the meaning of the statutory provision. In making this determination, we do not write on a clean slate. Well-settled principles enunciated by the appellate courts of this state establish that the notes and evidence of indebtedness received by plaintiffs were not procured for purposes of speculation and investment and, therefore, do not fall within the ordinary concept of a security.

Section 301 of the MUSA, MCL 451.701; MSA 19.776(301), makes it unlawful for any person to offer or sell any security in the state unless it is registered under the act or the security or transaction was exempted under § 402. The purpose of this statutory restriction on the offer or sale of securities is to protect the public against fraud and deception in the issuance, sale, exchange or disposition of securities. *People v Dempster,* 396 Mich 700, 704; 242 NW2d 381 (1976). As a matter of judicial policy, the act should be broadly construed to effectuate this purpose. *Id.*

A "security" is defined in § 401(l) as follows:

> "Security" means any *note;* stock; treasury stock; bond; debenture; *evidence of indebtedness;*

certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. *"Security" includes any contractual or quasi contractual arrangement pursuant to which: (1) a person furnishes capital, other than services, to an issuer; (2) a portion of that capital is subjected to the risks of the issuer's enterprise; (3) the furnishing of that capital is induced by the representations of an issuer, promoter, or their affiliates which give rise to a reasonable understanding that a valuable tangible benefit will accrue to the person furnishing the capital as a result of the operation of the enterprise; (4) the person furnishing the capital does not intend to be actively involved in the management of the enterprise in a meaningful way; and (5) a promoter or its affiliates anticipate, at the time the capital is furnished, that financial gain may be realized as a result thereof.*

We reject at the outset any suggestion that the present transaction, memorialized by the issue of "notes" and "evidence of indebtedness," must be considered a security transaction simply because the statutory definition of security includes the words "any note . . . [or] evidence of indebtedness." Rather, we adhere to the basic principles that have guided the appellate courts in this state in their decisions in this area.

In general, the courts that have interpreted Michigan's security statutes have been careful to

look beyond the form of the transaction to its substance, paying special attention to the economic realities of the situation. *People v Breckenridge,* 81 Mich App 6, 16-17; 263 NW2d 922 (1978), lv den 402 Mich 915 (1978); *Dep't of Commerce v DeBeers Diamond Investment, Ltd,* 89 Mich App 406, 409-410; 280 NW2d 547 (1979), lv den 406 Mich 998 (1979). Whether a particular transaction must be considered a security transaction depends upon the statutory language, the real nature of the transaction, and the real intent and purpose of the parties, ascertained by looking beyond labels and devices. *People v Blankenship,* 305 Mich 79, 85-86; 8 NW2d 919 (1943); *Breckenridge, supra; Prince v Heritage Oil Co,* 109 Mich App 189, 197; 311 NW2d 741 (1981); *Moffit v Sederlund,* 145 Mich App 1, 15; 378 NW2d 491 (1985), lv den 425 Mich 860 (1986).

In *Breckenridge, supra,* this Court considered the applicability of the MUSA to a transaction involving promissory notes. The Court noted that the salient feature of a securities sale under the MUSA is the public solicitation of venture capital to be used in a business enterprise. The Court, quoting with approval from *Bronstein v Bronstein,* 407 F Supp 925, 930 (ED Pa, 1976), then opined:

> "The question whether a note constitutes a covered security depends on whether the note was procured for purposes of speculation or investment or *for purposes of making a commercial loan.* As a matter of policy, this distinction is a valid one. The federal securities laws are designed to protect investors, *not persons engaged in ordinary consumer or commercial loan transactions* . . . . Thus courts have restricted application of the Acts to those notes procured for investment and have excluded notes issued in the context of a commercial loan transaction. [*Breckenridge, supra,* pp 15-16.]

With these general principles in mind, we return to the language of § 401(l). We read the expressly enumerated factors set forth in § 401(l) to constitute the factors to be considered in determining the investment character of a transaction. In the context of a "note" or "evidence of indebtedness" these factors would aid the court in distinguishing an investment or securities transaction from a loan transaction. From our review of the record, we find that the trial court properly used these factors to determine the investment character of the transaction.

We also conclude that the trial court's finding that the notes and accounts did not constitute securities within the meaning of § 401(l) was not clearly erroneous. Trial testimony established that plaintiffs' accounts arose as a result of industry-wide practices regarding the dealings between growers and independent fruit processors. Each grower had the option to request payment of all or any part of his or her account balance from the TCCC. Any portion of the balance which remained with the TCCC bore interest at a fixed rate and, therefore, the return to plaintiffs was not dependent on the profit made by the TCCC. The promissory notes issued to plaintiffs in October, 1981, were merely a consolidation of the plaintiffs' account balances through 1980. The return promised on these notes was premised on a rate of interest and not on the profits of the TCCC. Finally, the testimony of individual plaintiffs demonstrated that they understood the nature of the transaction with the TCCC as a loan rather than as an investment.

We are next asked to determine whether the trial court clearly erred when it found that plaintiffs Julius Bugai and Emily Nash Smith had made "bona fide loans" to the TCCC and, therefore, that

the transactions were not security transactions governed by the MUSA.

The terms "offer" and "sale" are defined in § 401(j). Section 401(j)(6)(A) specifically excludes "[a]ny bona fide loan" from the definition of these terms.

The record establishes here that the promissory notes issued to Smith and Bugai were given in exchange for cash. Bugai testified at trial that he intended to make a loan to the TCCC. These facts coupled with the fact that the notes were interest bearing at a fixed rate and the return thereon did not depend on the profits of the TCCC, indicate that the transactions were loans rather than investments. Accordingly, we conclude that the trial court did not clearly err in finding as a fact that Smith and Bugai had made bona fide loans to the TCCC.

On cross-appeal, we are asked to determine whether the trial court erred in denying an award of attorney fees to defendants pursuant to MCR 2.403.

A party is liable for the opposing party's attorney fees under MCR 2.403(O) only if the party has rejected the evaluation and the verdict is less favorable to the rejecting party (by more than ten percent) than the mediation evaluation.

In the instant case, plaintiffs rejected the May 15, 1985, mediation evaluation. Defendants accepted same. We, however, find that the mediators issued no valuation which could be accepted or rejected by the parties. While the mediators did find that defendants were liable to plaintiffs, they left the issue of damages open and invited the parties to submit additional material on the issue. Both parties accepted this invitation. The mediators failed to place a value on plaintiffs' damages prior to the trial. Accordingly, the May 15, 1985,

mediation evaluation presented no settled decision. Thus, because plaintiffs might have accepted the mediation valuation if they had not expected further action as to the issue of damages, we conclude that it would be unfair to subject plaintiffs to the penalty provisions of MCR 2.403(O).

Defendants also ask us to determine whether the trial court clearly erred when it found that defendants Dorothy Jane Kellogg, Ray Ellsworth Kellogg and Gerald Thomas Stein had failed to meet the burden imposed upon them by MCL 451.810(b); MSA 19.776(410)(b). Because we have determined that the trial court correctly found that the instant transaction was not governed by the MUSA, we decline to make such a determination.

Defendants' remaining issues were not addressed by the trial court. We, therefore, decline their review. *People v Turner,* 123 Mich App 600, 604; 332 NW2d 626 (1983).

Affirmed.