LESHER v. BONNER.

WOLFOLK v. SAME.

1. CORPORATIONS—STOCK—FRAUD—OPINIONS—RESCISSION.
   Stock seller's positive statements as to earnings of company is not mere opinion and if made, false, and relied upon by buyer, he may rescind on ground of fraud.

2. APPEAL AND ERROR—COURT RULES—DELAY IN APPEALING.
   Question as to liability of bonding company on bond of securities dealer is not considered where plaintiffs did not attempt to appeal from judgments in its favor within time prescribed by Court Rule No. 57 (1933).

3. CORPORATIONS—STOCK—FRAUD—QUESTIONS OF FACT—EVIDENCE.
   Testimony in action by purchasers of stock allegedly sold in violation of blue sky law on questions of fact as to whether plaintiff was the real party in interest, whether fraudulent representations were made by defendants and whether they owned the stock sold *held*, sufficient to sustain findings of trial court who heard case without a jury.

4. SAME—CONTRACTS—INTERMEDIATE BROKERS.
   Contractual relations existed between sellers and buyers of corporate stock notwithstanding fact that a number of brokerage houses acted as intermediaries since they were merely agents of the respective parties.

5. SAME—FRAUD—TENDER OF WORTHLESS STOCK—RESCISSION.
   Buyer who has been defrauded, need not make tender of worthless stock in order to rescind.

6. APPEARANCE—WAIVER OF JURISDICTIONAL IRREGULARITIES.
   General appearance waived all irregularities in regard to service so that question is not discussed as to jurisdiction conferred by service upon chairman of securities commission in case where trial court found no violation of the blue sky law.

Appeals from Wayne; Moll (Lester S.), J. Submitted June 12, 1934. (Docket No. 106, Calendar No. 37,891.) Decided October 23, 1934.

Separate actions of case by Ralph Lesher and Guy Wolfolk against David T. Bonner, Francis A. Bonner and William L. Nolan, individually and doing business as Bonner, Brooks & Company, a copartnership, and the Massachusetts Bonding & Insurance Company, a Massachusetts corporation, for fraud in sale of stock. From judgments for plaintiffs against defendants Bonner, Nolan, and Bonner, Brooks & Company, they appeal. From judgment for defendant bonding company, plaintiffs appeal. Affirmed.

*Pear, Beattie & Langs* (*Donald K. Tyler,* of counsel), for plaintiffs.

*Monaghan, Crowley, Reilley & Kellogg,* for defendants.

BUTZEL, J. Ralph Lesher, a resident of Detroit, brought suit against David T. Bonner, Francis A. Bonner and William L. Nolan, individually and doing business as Bonner, Brooks & Company, a copartnership engaged in the stock brokerage business in New York City. The Massachusetts Bonding & Insurance Company was also joined as defendant. A companion suit also was brought by Guy Wolfolk, of Ann Arbor, against the same defendants and arising out of substantially the same transaction. The cases were tried together and will be discussed as if consolidated into one. In as much as the claims of error refer principally to questions of fact, it becomes necessary to briefly state the very complicated set of facts. In the year 1929, Bonner, Brooks & Company were heavily interested in the stock of the General Laundry Machinery Corporation, a Delaware corporation, that had been organized through the merger of a number of other companies engaged in the manufacture of laundry machinery. Bonner,

Brooks & Company were interested both in the sale and distribution of the stock of the new company. Pursuant to an application filed with the Michigan securities commission, an order had been issued by the commission permitting the sale of 35,000 shares of the corporation's no par value stock at the price of $20 per share. The total original capitalization of the corporation was 100,000 shares. Bonner, Brooks & Company also obtained a dealer's license from the Michigan securities commission and, as required by law, filed a $10,000 bond with defendant Massachusetts Bonding & Insurance Company as surety.

Bonner, Brooks & Company had some relationship with one Gene Weiner. It is plaintiff's claim that Weiner was simply a contact man whose function was to interest distributors or purchasers in the stock. Lesher, who had had previous experience in the stock brokerage business, became acquainted with Weiner in 1927, or the early part of 1928. In the early part of September, 1929, Weiner was in Detroit and told Lesher of a certain stock with fine possibilities. Some time later, on the 16th of September, Weiner from his suite in the Book-Cadillac Hotel in Detroit called Lesher and invited him to come over and meet a member of a New York banking house. Upon his arrival Lesher was introduced to David T. Bonner, of the defendant firm. Lesher testified that Bonner then and there induced him by false representations to purchase stock in the General Laundry Machinery Corporation. He claims that Bonner, who was at the time a director of the corporation, informed him that the company was doing a very large and successful business; that it had earned $3.75 per share for the first nine months of the year, and would earn between $5 and $6 per

share for the entire year; that the stock should sell at at least 10 times its earnings, and that some of the men on Wall street believed that 18 times earnings was a correct price for stock; that it would sell at between $50 and $60 per share very shortly; that a pool was being organized which would include the Harriman interests of New York, Bonner, Brooks & Company, and others; that Weirfer was running the market, while Bonner, Brooks & Company were furnishing the money; that the latter were purchasing the stock and were going to put it up higher; and that he, Bonner, had just purchased some of the stock at about $20 per share on the New York curb exchange. Many of these false representations are merely statements of opinion, and would, therefore, not support an action based upon fraud. However, Bonner's positive statement as to the earnings of the company, upon which Lesher relied, is not a mere opinion and if it was made, and was false, as the trial judge found, Lesher was entitled to rescind on the ground of fraud any purchase of stock made from Bonner's firm in reliance upon such statement. Bonner testified that the actual earnings of the corporation were $1.04 per share for the first six months of 1929, and approximately 16 cents per share for the entire year of 1929; that there was a definite decrease in earnings during the last six months of 1929, but that he had no knowledge as to what the earnings of the corporation were for the period constituting the first eight months of 1929.

On the strength of the representations above described, Lesher became eager to purchase a large block of the stock and inquired from Bonner how the purchase could be handled. Bonner told him to make the purchase through his own broker. The following day Lesher placed an order for 1,900

shares with Merrill-Lynch & Company, a New York and Detroit brokerage house. Merrill-Lynch & Company employed brokers to purchase the stock on the New York Curb Exchange, and the latter in turn purchased the stock from brokers representing Bonner, Brooks & Company. The stock was purchased at prices varying from $22 to $22.50 per share, the total sum paid being $42,862.50 for the 1,900 shares. Lesher testified that he did not have the money to make the purchase but that Martha Lesher, his mother, had agreed to assist him and accordingly the stock was ordered through Merrill-Lynch & Company, with which firm Mrs. Lesher had a brokerage account, the purchase money being advanced by the Detroit Trust Company as a loan to Mrs. Lesher. Lesher positively testified that the stock belonged to him, and not to his mother. Although the stock was purchased in her name, it was understood, as stated by an officer of the trust company, that it belonged to plaintiff, Ralph Lesher, who subsequently "collaterated" with the trust company 400 shares of other valuable stock standing in his own name, and belonging to him, when the General Laundry Machinery Corporation stock had receded in value and the trust company demanded more collateral. The trust company official testified that Mrs. Lesher had refused to put up any more collateral, and stated at the time that the transaction was her son's matter and that he would have to protect it.

In January, 1930, Lesher became manager of the Detroit office of Bonner, Brooks & Company, in which capacity he continued until the last of April, 1930. The market price of the stock began to recede almost immediately after the purchase by Lesher, and continued to fall until the stock was deemed

worthless. Lesher testified that he was not aware of the falsity of Bonner's representations for a considerable period, but that as soon as he learned of the fraud which had been practiced upon him he took immediate action. He wrote to Bonner, Brooks & Company, through his attorneys, under date of August 18, 1931, making a tender of the shares and demanding a return of the purchase price, plus interest, and threatened suit unless an adjustment was made. He did not make a physical tender of the stock, but stated that he was ready to deliver it through the trust company or any other channel Bonner, Brooks & Company might suggest. In addition, a tender of the stock was made in open court at the trial of the case. The market price of the stock at the end of 1930 had already gone down to approximately $1 per share, and on January 8, 1931, the company went into the hands of receivers. Bonner testified that the creditors would not be paid in full. The stock had become worthless. Upon the failure of Bonner, Brooks & Company to return the purchase price and interest to Lesher, as demanded, he began the instant suit against them, joining the Massachusetts Bonding & Insurance Company as defendant. Guy Wolfolk also instituted the companion suit. Wolfolk corroborated the testimony of Lesher as to the statements made by David T. Bonner, upon which he claims he relied, and without which he would not have purchased the stock.

Lesher's declaration consists of three counts. The trial court entered judgment in both cases against David T. Bonner, Francis A. Bonner, and William A. Nolan, individually and doing business as Bonner, Brooks & Company, under the count based upon rescission for fraud, and seeking judgment for the return of the purchase money plus interest. Judg-

ment of no cause for action was entered as against defendant Massachusetts Bonding & Insurance Company.

We shall first consider the question raised by plaintiffs in their cross-appeals. Bonner, Brooks & Company filed a timely appeal from the judgments rendered against them. The judgments were entered on September 25, 1933. Motions for a new trial made by them were denied on November 18, 1933. Claims of appeal were filed by them on December 6, 1933, within 20 days after the motions for a new trial were denied, in accordance with Court Rule No. 57 (1933). The Massachusetts Bonding & Insurance Company, obviously satisfied with the result, did not appeal, but on December 15, 1933, long after the time for taking an appeal had elapsed, plaintiffs filed cross-appeals in which they claimed that the court erred as a matter of law in not entering judgment under the counts against the Massachusetts Bonding & Insurance Company. Counts in the declarations seeking to hold the bonding company are based entirely upon the theory that plaintiffs were entitled to rescind and recover the purchase price in assumpsit because of certain alleged violation of the blue sky law. It is principally alleged that the shares of stock sold to plaintiffs were not validated by the Michigan securities commission and that they were sold in excess of $20 per share, in violation of the order of the commission, and that, therefore, under section 20 of the act, 2 Comp. Laws 1929, § 9788, Bonner, Brooks & Company are liable for the full amount of the purchase price and the interest, while the Massachusetts Bonding & Insurance Company, as surety on the former's bond, is also liable to the extent of $10,000, the amount of their bond. The record shows that upon application

of the General Laundry Machinery Corporation,
35,000 of its 100,000 shares of common stock were
validated by the Michigan securities commission at
$20 per share in August, 1927. There is no provi-
sion in the law requiring the earmarking of stock
validated by the commission so as to distinguish it
from other stock. Although it was shown that plain-
tiffs had access to the stock book of the General
Laundry Machinery Corporation, they made no
showing that the shares sold to them were not part
of the 35,000 shares validated by the commission, or
that more than 35,000 shares had been sold in Mich-
igan. As to plaintiffs' claims that the sale of stock
to them at a price in excess of $20 per share was in
violation of the order of the commission, the secre-
tary of the commission testified that the fixing of a
price on the stock was intended to affect only the
original sale by the corporation, and did not limit
purchasers thereafter from selling it at a higher
price. However, we need not further consider the
question of the claimed violation of the blue sky law,
as thus presented by plaintiffs, since the plaintiffs'
so-called cross-appeals are not properly before the
court. Their appeals are original ones against the
Massachusetts Bonding & Insurance Company. If
plaintiffs were dissatisfied with the judgments, they,
too, should have appealed within the time provided
for by Court Rule No. 57 (1933). Having failed to
do so, they lost the right to appeal from the judg-
ment in favor of the Massachusetts Bonding & In-
surance Company.

We now consider the assignments of error filed by
defendants in their appeal. Defendants contend
that Ralph Lesher was not the real party in interest,
and furthermore that they were not guilty of mis-
representations amounting to fraud. These are

questions of fact and we believe the judgment of the trial court, who heard the case without a jury, is fully sustained by the testimony. Appellants further claim that there was no contractual relationship between themselves and Lesher upon which a rescission suit could be based. Some confusion is injected into the case by a so-called "Buckley-Adair" account. One Jack Adair and Paul Buckley also had some interest in the sale of the stock to Lesher. Defendants claim that the stock purchased by Lesher was not owned by defendants, but was held in a "Buckley-Adair" joint account, and was sold by Bonner, Brooks & Company for that account. From the record, it appears that on the same date that Lesher's purchase was consummated, a Buckley-Adair joint account was set up on the books of Bonner, Brooks & Company, to which 4,200 shares of General Laundry Machinery Corporation stock were credited by Bonner, Brooks & Company. The account also shows the sale of 2,900 shares of the stock on the same day. According to the testimony, no money was ever received by Bonner, Brooks & Company from Buckley or Adair for such stock, nor was stock ever delivered to the latter. However, as stock was sold from the account, checks in payment of the excess over $20 per share were delivered to them by Bonner, Brooks & Company. Less than a month later the stock remaining in the account was charged back to Bonner, Brooks & Company. The record fully supports the finding of the trial judge that the stock was not owned by these parties, but that at the most they were optionees assisting in the sale and distribution of the stock for Bonner, Brooks & Company, in return for which they were to receive the profits in excess of $20 per share.

Appellants claim, however, that even if the stock in question were actually owned by Bonner, Brooks & Company, there was no contractual relation between plaintiff and themselves, because of the fact that a number of brokerage houses acted as intermediaries in the purchase of the stock. The intervening brokers did not deal in the stock on their own account but merely executed orders for the respective vendor and vendee. Merrill-Lynch & Company, brokers for plaintiff, employed other brokers dealing upon the exchange to purchase the stock. The latter completed the negotiations again through other brokers who were selling the stock for Bonner, Brooks & Company, the actual owners. The first link in the chain was Lesher, the purchaser; the last link was Bonner, Brooks & Company, the actual vendor. The purchase was made by agents of plaintiff's agent, from agents of the defendants. The stock went directly from Bonner, Brooks & Company to Lesher, and the purchase money went from Lesher to Bonner, Brooks & Company. While the English cases cited in plaintiff's brief may be distinguished on the ground of a slightly different practice found on the London stock exchange, we believe the correct rule is stated in the language in *Hodgkinson* v. *Kelly,* L. R. 6 Eq. 496 (37 L. J. Ch. 837, 16 W. R. 1078):

"For instance, in this case it was strongly argued that there was no privity between the plaintiff and the defendant, that they personally entered into no contract with each other, and that neither authorized any agent to enter into a contract with the other. The stock exchange, with its ramifications, is the only body through which stock, shares, and the like, can be bought or sold by the public. * * * The question, then, is, what is the nature of the contract

which a man enters into when he directs shares to be bought or sold through the instrumentality of the stock exchange? The answer, in my opinion, is a very plain and obvious one; he undertakes to buy and sell according to the practice and usage of the stock exchange, assuming of course such practice and usage not to be illegal. * * * It was put in argument as resembling a contract by which A sells to B, B to C, C to D, and D to E, and at the request of B, C and D, A executes the transfer to E; but, in truth, this does not appear to me to put the case sufficiently high; it is, in my opinion, an engagement entered into by A on one side, and E on the other, that through the instrumentality of certain other persons, whoever they may be, certain shares shall be sold and bought, and they undertake to complete the contract with the person, whoever he may be, who buys on one hand and sells on the other. * * * It is obvious, also, that it is founded on common sense and common honesty, for it is of no sort of importance to A to know to whom his shares are transferred, nor is it to B to know from whence the shares come. It is a machinery by which A sells to B, and they are, in fact, in law and equity, the ultimate contracting parties; when, therefore, the transaction is complete, the necessary consequences flow from it, of which one is, that the buyer must indemnify the seller from all the consequences flowing from the ownership of the shares subsequent to the transfer.''

The contract was in fact made between Lesher and Bonner, Brooks & Company, and since it was induced by the false representations of the latter, Lesher was entitled to rescind and sue for the return of the purchase money, with interest. Appellants conceded that the Wolfolk stock came from the same source as the Lesher stock, though they insisted it was not from appellants' stock.

We need not discuss appellants' claim that there was an insufficient tender of the stock at the time of notice of rescission. The record shows that the stock had become worthless and a tender was consequently unnecessary.

Appellants further claim that in as much as service was obtained upon them through service upon the chairman of the Michigan securities commission, and the court subsequently found that there was no violation of the blue sky law, the court was accordingly without jurisdiction of their persons. Appellants filed a general appearance, answered the declarations, participated in the trial on the merits, and for the first time raised the question of service upon motions for a new trial. The general appearance waived all irregularities in regard to service. *Harvey* v. *Stewart,* 260 Mich. 66.

The judgment of the lower court is affirmed. Plaintiffs will recover costs from all the defendants with the exception of the Massachusetts Bonding & Insurance Company, which will recover costs from plaintiffs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.