PRINCE v HERITAGE OIL COMPANY

Docket No. 47076. Submitted December 3, 1980, at Lansing.—Decided September 9, 1981.

Donald G. Prince, Kurt A. Wipperfurth, and D. J. K. Company brought an action against Heritage Oil Company, Dr. Marion Sokolowski, and Joseph L. Fortuna, seeking rescission of the sale to plaintiffs by defendants of interests in certain oil and gas wells or, in the alternative, damages resulting from defendants' breach of the sales agreements. Following trial, Eaton Circuit Court, Hudson E. Deming, J., found the transactions to constitute sales of securities within the meaning of the Uniform Securities Act, that all but one of the sales were exempt from registration requirements under the act, that plaintiffs were entitled to rescission of the sale not in compliance with the act, and that the defendants did not violate the antifraud provisions of the act in the sale of the securities or breach the sales agreements. Plaintiffs appeal; defendants cross-appeal. *Held:*

The trial court erred in holding that the defendants were entitled to an exemption from the registration requirements in two of the three transactions. Defendants' retention of leasehold working interests in the wells and receipt of interests for prices grossly below those paid by plaintiffs constituted receipt of "other remuneration" for the solicitation of plaintiffs as prospective purchasers of the interests, making an exemption unavailable. Plaintiffs thus were entitled to rescind the entire transaction and to an award of costs and attorney fees as determined following an evidentiary hearing on remand.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 69 Am Jur 2d, Securities Regulation—State § 29.
[2, 7] 69 Am Jur 2d, Securities Regulation—State § 60.
[4] 69 Am Jur 2d, Securities Regulation—Federal § 24.
[5] 69 Am Jur 2d, Securities Regulation—State § 17.
[6] 69 Am Jur 2d, Securities Regulation—State § 108.
[8, 10] 69 Am Jur 2d, Securities Regulation—State § 12.
  Duty to disclose material facts to stock purchaser. 80 ALR3d 13.
[9, 10] 69 Am Jur 2d, Securities Regulation—State § 97.
[11] 69 Am Jur 2d, Securities Regulation—State § 95.

1. SECURITIES REGULATION — STATUTES.

It is unlawful for any person to offer or sell any security in Michigan unless it is registered in accordance with the Uniform Securities Act or the security or transaction is exempted from registration (MCL 451.701; MSA 19.776[301]).

2. SECURITIES REGULATION — TRIAL — JUDICIAL CONSTRUCTION — STATUTES.

A trial court in an action alleging violation of the Uniform Securities Act in the sale of securities must ascertain the substance of the transaction and the real intent and purpose of the parties, looking beyond labels and devices, to determine whether the transaction comes within the purview of the act (MCL 451.501 et seq.; MSA 19.766[101] et seq.).

3. SECURITIES REGULATION — JUDICIAL CONSTRUCTION — STATUTES.

Classification of a transaction as a sale of securities depends on the economic realities underlying the transaction; the salient feature of a securities sale under the Uniform Securities Act is the public solicitation of venture capital to be used in a business enterprise, and subjection of an investor's money to the risks of an enterprise over which he has no managerial control is the basic economic reality of a security transaction (MCL 451.801[1]; MSA 19.776[401][1]).

4. SECURITIES REGULATION — OIL AND GAS LEASES — STATUTES.

A sale of a fractional interest in oil and gas leases for the purpose of securing the seller's investment in the venture constitutes a sale of securities within the meaning of the Uniform Securities Act (MCL 451.801[1]; MSA 19.776[401][1]).

5. SECURITIES REGULATION — OIL AND GAS LEASES — EXEMPTION FROM REGISTRATION — STATUTES.

Retention by a seller of oil and gas leases of a leasehold interest in the wells without informing outside investors in the venture that the seller had not contributed proportionate capital or receipt by the seller of securities in the venture for prices grossly below those paid by the outside investors constitutes the receipt of a commission or other remuneration for soliciting a prospective buyer of securities and a material omission of fact under the Uniform Securities Act and precludes exemption of the sale from the requirement of registration (MCL 451.501[2], 451.701, 451.802[b][9], 451.810(a); MSA 19.776[101][2], 19.776[301], 19.776[402][b][9], 19.776[410][a]).

6. SECURITIES REGULATION — EXEMPTION FROM REGISTRATION — BURDEN OF PROOF — STATUTES.

A defendant in an action involving the sale of securities who claims an exemption from the registration requirement under the Uniform Securities Act has the burden of proving the availability of the exemption once the plaintiff establishes a prima facie case that the defendant received a commission or other remuneration for the sale or made a material omission of fact, thereby precluding the exemption (MCL 451.802[d]; MSA 19.776[402][d], since amended 1978 PA 481 and renumbered MCL 451.802[c]; MSA 19.776[402][c]).

7. SECURITIES REGULATION — EXEMPTION FROM REGISTRATION — JUDICIAL CONSTRUCTION — STATUTES.

Exemptions from registration under the Uniform Securities Act are to be afforded expansive construction (MCL 451.802; MSA 19.776[402]).

8. SECURITIES REGULATION — MATERIAL OMISSIONS — STATUTES.

A material misstatement or omission of fact in the sale of securities is one which a reasonable investor might consider important to his investment decision (MCL 451.501[2], 451.810[a]; MSA 19.776[101][2], 19.776[410][a]).

9. SECURITIES REGULATION — FRAUD — TENDER — RESCISSION.

A buyer of securities who has been defrauded need not make tender of worthless securities to be entitled to rescission.

10. SECURITIES REGULATION — EXEMPTION FROM REGISTRATION — FRAUD — RESCISSION — STATUTES.

A buyer of securities which were not registered pursuant to the Uniform Securities Act and which were not entitled to exemption from registration because of the seller's omission of facts material to the transaction or receipt of a commission or other remuneration for the sale is entitled to rescind the entire transaction (MCL 451.802; MSA 19.776[402]).

11. SECURITIES REGULATION — FRAUD — COSTS — ATTORNEY FEES — STATUTES.

A plaintiff who prevails in an action involving fraud in the sale of securities under the Uniform Securities Act is entitled to costs and reasonable attorney fees (MCL 451.810[a]; MSA 19.776[410][a]).

*Warner, Norcross & Judd* (by *Ernest M. Sharpe* and *Jeffrey O. Birkhold*), for plaintiffs.

*William E. Tapovatz,* for defendants.

Before: DANHOF, C.J., and M. F. CAVANAGH and MacKenzie, JJ.

MacKenzie, J. This case requires us to determine (1) whether the sale of undivided fractional interests in (three) oil and gas leases constituted the sale of "securities" within the meaning of the Uniform Securities Act, MCL 451.501 *et seq.;* MSA 19.776(101) *et seq.,* (2) if so, whether defendants' retention of leasehold interests in the wells without contributing their proportionate share of capital comprised "commissions or other direct or indirect remuneration" on the sale such that defendants lost the exemption from registration under § 402(b)(9) of the act, MCL 451.802(b)(9); MSA 19.776(402)(b)(9), entitling plaintiffs to the remedy of rescission, or (3) whether defendants' failure to tell plaintiffs that defendants were not contributing proportionate capital for their interests constituted a material omission of fact also entitling plaintiffs to rescission under § 410(a)(2) of the act, MCL 451.810(a)(2); MSA 19.776(410)(a)(2).

Since the sale of the oil and gas interests herein occurred in 1976, the provisions of the act then in effect will be applied. The amendment of several pertinent sections by 1978 PA 481, effective March 30, 1979, will be discussed but is not binding us to this particular case.

Following a bench trial held on February 26 and 27, 1979, Eaton Circuit Judge Hudson E. Deming found that three separate oil and gas ventures were involved herein. Judge Deming found that defendants are in the business of obtaining oil and gas leases from property owners, contacting individuals to determine if they wish to participate financially in drilling, and drilling wells on such

lands. Defendants share profits and losses equally. Judge Deming further held that plaintiffs Prince and Wipperfurth, who are bridge and marine contractors, had invested money through a partnership, plaintiff D. J. K. Company, for six years and that they had previously invested in oil and gas wells. Thus, Judge Deming concluded that plaintiffs were "sophisticated and knowledgeable businessmen".

The trial judge found that plaintiff Prince heard about defendant Sokolowski and the first of the three wells through a cousin of defendant Sokolowski. Prince discussed the matter with plaintiff Wipperfurth, and plaintiffs had phone conversations with defendant Sokolowski. The latter informed plaintiff Prince that the cost for a 4/64 leasehold working interest of 3/4 of all oil and gas from the Gullett enterprise would be $14,400. The parties entered into a written joint venture agreement on June 8, 1976, whereby plaintiffs paid defendants $14,400 for the agreed participation in the Gullett Well. Gullett proved to be a dry hole.

Subsequent to the failure of the Gullett venture, the parties met and discussed participation in the Kent Well to be drilled later in the summer. The trial judge found that plaintiffs Prince and Wipperfurth, acting separately, invested a total of $7,200 for 2/64 leasehold working interest of 3/4 of all oil and gas from the Kent Well, and $7,200 for 2/64 leasehold working interest of 3/4 of all oil and gas from the Southwick Well. Each well also proved to be a dry hole.

The court further found that plaintiffs knew their money would be gone if the ventures proved to be dry holes. The court accepted defendant Sokolowski's testimony that he did not represent to plaintiffs that the lease cost was $10,000 and

defendant Fortuna's testimony of the work required in obtaining the various leases.

The court held that none of the transactions had been registered with the Michigan Corporation and Securities Bureau, that defendants had no outside salesmen or promoters nor any written sales material, and that all the investors contacted actually invested in the ventures and were residents of the State of Michigan. Regarding the amount invested in each well and the number of investors, Judge Deming held:

> "In the Gullett Well, there were 11 investors who purchased 18/64 leasehold working interests in 6/8 of the oil and gas for a total of $63,900.00. The total of the itemized costs of the defendants was $64,486.40.
>
> "In the Kent Well, there were 13 investors who purchased 23/64 leasehold working interests in 6/8 of the oil and gas for a total of $82,800.00. The total of the itemized costs of the defendants was $53,384.55.
>
> "In the Southwick Well, there were 5 investors who purchased 9/64 leasehold working interests in 6/8 of the oil and gas for a total of $32,400.00. The total of the itemized costs of the defendants was $72,031.56."

The trial judge found that defendants' use of ten percent of the cost of drilling for administrative overhead and another ten percent for supervision and maintenance was reasonable.

Judge Deming also held that defendants had perpetrated no fraud upon plaintiffs, that defendants had performed their end of the contract by drilling the wells in the Niagaran formation, and thus, that defendants had not breached the contracts. The court found that the parties had not been engaged in a joint venture.

With respect to the alleged securities laws violations, Judge Deming concluded (1) that defendants had sold securities to plaintiffs in each of the three

wells, (2) that defendants had not made any material misstatements (or omissions) of fact in selling the securities, (3) that the Gullett and Southwick ventures fell within the § 402(b)(9) exemption since neither the leasehold working interests retained by defendants nor the reimbursement for expenses constituted commissions or direct or indirect remuneration for soliciting the sales, and (4) that the Kent venture did not fall within § 402(b)(9) because defendants received remuneration of $29,415.45 (the difference between the amount investors contributed and the cost to drill the well) and that therefore plaintiffs were entitled to judgment of $7,200 plus interest regarding this count. Plaintiffs appeal, and defendants cross appeal.

Under MCL 451.701; MSA 19.776(301), "[i]t is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 402". Thus, the threshold question is whether defendants sold plaintiffs "securities" within the meaning of the act.

At the time the parties entered into the three transactions herein, "security" was defined in MCL 451.801(1); MSA 19.776(401)(1) as follows:

" 'Security' means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate of interest or participa-

tion in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 'Security' does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period."

The following language was added to the definition of "security" by the most recent amendment, 1978 PA 481, effective March 30, 1979:

" 'Security' includes any contractual or quasi contractual arrangement pursuant to which: (1) a person furnishes capital, other than services, to an issuer; (2) a portion of that capital is subjected to the risks of the issuer's enterprise; (3) the furnishing of that capital is induced by the representation of an issuer, promoter, or their affiliates which give rise to a reasonable understanding that a valuable tangible benefit will accrue to the person furnishing the capital as a result of the operation of the enterprise; (4) the person furnishing the capital does not intend to be actively involved in the management of the enterprise in a meaningful way; and (5) a promoter or its affiliates anticipate, at the time the capital is furnished, that financial gain may be realized as a result thereof. 'Security' does not include an insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period or a commodity contract. The administrator may exclude by rule or by order other transactions or agreements from the definition of the word 'security'."

Defendants had obtained drilling rights and leasehold interests entitling them to a fraction (3/4) of the oil and gas produced on the land in question. The joint venture agreements purported to convey to plaintiffs an undivided fractional

"leasehold working interest" in the drilling sites
and 3/4 of the oil and gas produced. Defendants
argue that plaintiffs only bargained for the actual
drilling of the wells in the Niagaran formation.
Admittedly, the joint venture agreements provided
that if defendants drilled the wells according to
the specifications and the wells failed to produce
oil or gas, plaintiffs would retain no further inter-
est in the property. However, the contracts also
provided that if oil and gas were found plaintiffs
owned a fractional interest in the minerals, pro-
viding plaintiffs continued to share costs of produc-
tion. These circumstances support the trial court's
finding that plaintiffs did not receive a property
interest but an investment contract in the venture
initiated by defendants.

It is not necessary to utilize the new language in
the definition of "security" regarding "risk capi-
tal" to find that defendants sold securities to plain-
tiffs.

In *People v Breckenridge,* 81 Mich App 6, 14;
263 NW2d 922 (1978), the Court recognized the
general principle that:

"Whether or not a particular transaction comes
within the purview of a state securities law such as the
Uniform Securities Act depends on the language of the
statute and the real nature of the transaction. *State v
Hodge,* 204 Kan 98; 460 P2d 596 (1969). The court must
ascertain the substance of the transaction and the real
intent and purpose of the parties, looking beyond labels
and devices. *People v Blankenship,* 305 Mich 79; 8
NW2d 919 (1943)."

This Court in *Breckenridge* further noted that the
classification of a transaction as the sale of a
security depends on the economic realities under-
lying the particular transaction:

"The salient feature of securities sales under the Uniform Securities Act is the public solicitation of venture capital to be used in a business enterprise. Subjection of the investor's money to the risks of an enterprise over which she or he has no managerial control is the basic economic reality of a security transaction as defined in the context of the Uniform Securities Act. See *State of Hawaii by its Comm'r of Securities v Hawaii Market Center, Inc,* 52 Hawaii 642; 485 P2d 105 (1971)." *Id.,* 15.

In *Parvin v Davis Oil Co,* 524 F2d 112, 115 (CA 9, 1975), the Ninth Circuit Court of Appeals employed the following criteria for determining whether the sale of a fractional interest in oil and gas exploration constituted a security:

"This circuit has not determined under what circumstances such a fractional interest is a security under federal law. Those other circuits which have considered the issue have held such an interest to be a security when the seller or a third party will conduct drilling operations on the land subject to the leases and it is from these operations that the buyer expects to derive his profit. *Nor-Tex Agencies, Inc v Jones,* 482 F2d 1093 (CA 5, 1973), *Gilbert v Nixon,* 529 F2d 348 (CA 10, 1970)."

*Parvin* further held that the interests sold satisfied the definition of an "investment contract" as "[a]n interest in an enterprise * * * where 'the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which effect the success or failure of the enterprise' ". *Id.,* 115-116.

In *Blankenship, supra,* the Supreme Court of Michigan held that an undivided fractional interest in oil and gas was a security within the meaning of the statute then in effect. The Court reasoned that the interest conveyed to the grantee

was a purely speculative investment since (1) the grantee would be entitled to a share of the royalties *if, as,* and *when* the leases were developed and oil and gas were produced, and (2) the grantee was not entitled under the lease to future rentals, thus negativing the contention that the deeds conveyed an interest in land. The Court in *Blankenship, supra,* 87, quoted the Rhode Island Supreme Court in *State v Pullen,* 58 RI 294; 192 A 473 (1937), as follows:

" 'It is difficult to read these documents and not come to the conclusion that, notwithstanding the legal verbiage in which the transaction is clothed by such documents, they are, nevertheless, securities evidencing an investment by the purchaser in a share of oil produced and brought to the surface by the lessee of the land described therein. * * * Really and actually behind the form of a conveyance of an interest in land set out in these documents is an investment contract, and it is peculiarly the kind of an investment contract which lends itself readily to the perpetuation of the evil which the securities act is designed to eradicate."

In summary, we conclude, as did the Supreme Court of Michigan in *Blankenship,* that the circumstances surrounding the joint venture agreements herein belie the contention that they conveyed merely a property interest or that plaintiffs bargained only for defendants' performance in drilling said wells. Rather, we hold that the purpose of executing the documents was to secure plaintiffs' investment in a risky venture, exactly the type which the Uniform Securities Act was designed to regulate. Sale of the fractional interest in the venture constituted the sale of "securities" within the meaning of the act.

Next, we must consider whether the sale of securities in any or all of the three ventures was

exempt from registration under § 402(b)(9) which then provided:

"(9) Any transaction pursuant to an offer directed by the offeror to not more than 15 persons, other than those designated in paragraph (8), in this state during any period of 12 consecutive months, whether or not the offeror or any of the offerees is then present in this state, if:

"(A) The seller reasonably believes that all the buyers in this state, other than those designated in paragraph (8), are purchasing for investment; and

"(B) No commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this state, other than those designated in paragraph (8); but the administrator may by rule or order, as to any security or transaction or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in clauses (A) and (B) with or without the substitution of a limitation on remuneration." MCL 451.802(b)(9); MSA 19.776(402)(b)(9).[1]

The availability of the exemption in the instant factual situation hinges on whether defendants' retention of leasehold working interests in the oil and gas wells constituted the receipt of a "commission or other remuneration * * * paid or given directly or indirectly for soliciting any prospective buyer". We hold that the leasehold interests were, in fact, other remuneration from the sales.

From the testimony and exhibits at trial, it can

---

[1] Section 402(b)(9) was totally rewritten by the 1978 amendments. It should be noted, however, that the revised exemption retains the requirement that no commission be paid directly or indirectly for soliciting any prospective purchaser, "except to a broker-dealer registered pursuant to this act who is not affiliated with the issuer or its affiliates" and whose commission is reflected on the books and disclosed in writing to each prospective purchaser. MCL 451.802(b)(9)(C); MSA 19.776(402)(b)(9)(C).

readily be deduced that defendants received the bulk of the leasehold working interest in each venture with low or no financial investment. In the Kent venture, defendants received a 41/64 leasehold working interest of 3/4 of all gas and oil without any financial expenditures from their own pockets. Moreover, they received an excess of $28,-958.45 from investors' contributions over the cost of drilling. In the Gullett venture, defendants kept a 46/64 leasehold working interest of 3/4 of all oil and gas by contributing only $584.40 to the cost of drilling as compared to $63,900 contributed by other investors. In the Southwick venture, defendants retained a 55/64 leasehold working interest of 3/4 of all oil and gas for an investment of $39,631.56; other investors contributed $32,400 for only a 9/64 leasehold working interest in this venture. In each instance, defendants paid much less per share than the outside investors. Even in the Southwick venture, where defendants claim to have lost money, they received each share (1/64) for $720.58 as compared to $3,600 per share paid by plaintiffs and outside investors.

We hold that the receipt of securities by promoters for prices grossly below those paid by outside investors amounts to other remuneration. The effect of the interests retained by defendants was to dilute the equity paid by outside investors and to mislead plaintiffs and other investors into believing that defendants were contributing a proportionate share of capital for the interests retained. This practice was one of the evils the securities laws were enacted to thwart by regulating the percentage of an issue which may be retained by promoters, insurers, etc., and by disclosing this information to investors.

Clearly, under the statute, once plaintiffs estab-

lished a prima facie case, defendants had the burden of proving the availability of the exemption. Section 402(d), MCL 451.802(d); MSA 19.776(402)(d), now MCL 451.802(c); MSA 19.776(402)(c). Moreover, statutory exemptions, including those provided by the Uniform Securities Act, are to be afforded an expansive construction. *Rzepka v Farm Estates, Inc,* 83 Mich App 702, 707; 269 NW2d 270 (1978).

It is noteworthy that the 1978 amendment to the act added the following definition of commission, consistent with our holding:

"(r) 'Commission' means any payment in cash, securities, or goods for offering or selling, promise, or commitment to provide payment in the future for offering or selling, or any other similar payment. Commission does not include a real estate commission commensurate with fees paid in the area for similar services, paid to licensed real estate brokers solely for real estate services which have been rendered, or payment by a person to a lawyer or accountant in connection with advice or recommendations made by a lawyer or accountant to the client with whom the lawyer or accountant has an established professional relationship, if disclosure of the payment and the interest of the lawyer or accountant in the transaction or in the issuer or any affiliate of the issuer, is made in writing to the client before the sale. Officers, directors, and partners of an issuer or purchaser, or persons occupying a similar status shall not be considered a finder if their contact was purely incidental and their compensation was not directly or indirectly tied to or conditioned upon involvement in securities or commodities solicitation or purchase." MCL 451.801(r); MSA 19.776(401)(r).

We also find that defendants' revelation to plaintiffs that defendants had retained a certain percentage of the various ventures without informing plaintiffs that defendants had not contributed proportionate capital constituted a material omission

of fact under § 101(2), MCL 451.501(2); MSA 19.776(101)(2), and § 410(a) cited *supra.* A material misstatement or omission of fact has been defined as one which a reasonable investor might have considered important to his investment decision. *Mills v Electric Auto-Lite Co,* 396 US 375, 384; 90 S Ct 616; 24 L Ed 2d 593 (1970), *People v Cook,* 89 Mich App 72, 83; 279 NW2d 579 (1979). Certainly, the promoter's representation to a prospective purchaser that he had retained a certain percentage of a venture might tend to mislead the investor into believing that the investment was sound because the promoter himself invested heavily in it. A reasonably prudent investor would want to know that the promoter in such a situation received his stock without financial investment or at grossly lower prices.

We find no merit in defendants' argument that plaintiffs did not tender their securities so as to be entitled to rescission. Merely because the securities plaintiffs tendered are now worthless does not affect the validity of the tender. See *Lesher v Bonner,* 269 Mich 124; 256 NW 827 (1934).

Due to our finding that defendants were not entitled to the exemption under § 402(b)(9), plaintiffs are entitled to rescind the entire transaction. Judgment may be entered in favor of plaintiffs for $7,200 plus interest from July, 1976, in the Southwick venture and for $14,400 plus interest from July, 1976, in the Gullett venture. The trial court's award in favor of plaintiffs of $7,200 plus interest with respect to the Kent venture is affirmed. Plaintiffs are also entitled to costs and reasonable attorney fees under § 410(a). Since there are no proofs on the amount of costs or reasonable attorneys' fees, the matter is remanded to the trial court for an evidentiary hearing and determination of that issue. We retain no jurisdiction.

Reversed in part and remanded.