**William Franklin PROBST, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–77.**

Court of Criminal Appeals of Oklahoma.

March 5, 1991.

Rehearing Denied April 10, 1991.

Edward A. Reed, Danny K. Shadid, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

JOHNSON, Judge:

WILLIAM FRANKLIN PROBST, appellant, was charged with the crimes of Offer and Sale of Unregistered Securities, in violation of 71 O.S.1981, § 301, Count I; Failure to Register as Broker–Dealer or Agent, in violation of 71 O.S.1981, § 201, Count II; Fraud in the Offer and Sale of Securities, in violation of 71 O.S.1981, § 101, Count III; and, Embezzlement by Trustee, in violation of 21 O.S.1981, § 1454, Count IV, in Case No. CRF–87–429 in the District Court of Canadian County. At the preliminary hearing, the Honorable Ken Dickerson, Special Judge of Canadian County, sustained appellant's demurrer to all four counts. However, on the State's Rule 6 appeal (now 22 O.S.1981, § 1089.1 et seq.), the Honorable Edward C. Cunningham, District Judge, reinstated Counts I, II and III. Appellant was represented by counsel in a non-jury trial. The trial court returned a verdict of guilty on all three counts and set punishment at three (3) years imprisonment and a $5,000.00 fine for each count. The trial court ordered the sentences to run concurrently. From these Judgments and Sentences, appellant appeals.

In his first assignment of error, appellant contends that the district court erred in reversing the decision of the preliminary hearing magistrate with regard to Counts I, II and III because the State failed to present sufficient evidence that a security existed. We will, therefore, review the evidence presented at the preliminary hearing.

Prior to any testimony, both parties stipulated that appellant was not registered with the Department of Securities as an investment advisor, agent, broker, or dealer nor was the Charlestown Limited Partnership registered with the Department of Securities. The first witness, Barbara Yanda, testified that on December 18, 1984, she and her husband hired appellant for his estate planning services. At this initial meeting, Mrs. Yanda gave appellant a check made payable to "Stonemark International" for $5,000.00 as the first installment for his fee. The Yandas met with appellant again on December 20, 1984, at which time they paid appellant $10,000 as the balance of his fee. This check was also made payable to "Stonemark International."

During this second meeting, appellant also informed the Yandas of some apartments being built in Edmond and advised them that if they invested in the apartments, they would receive back their investment and, in addition, some of the profit when the apartments were sold. At that time, Mrs. Yanda gave appellant a check for $100,000.00. This check was made payable to "Alexco" and was designated for the "Edmond Project." Mrs. Yanda admitted that she did not know if appellant owned Stonemark International nor did she know if he had any ownership interest in the corporation.

Next, Mary Jackson testified that she had been a secretary for Glen Vance at the Commercial Funding Corporation for fifteen years. During her tenure, she stated that she performed duties for many corporations which were located in the Commercial Funding Corporation building, including ALEXCO. Ms. Jackson testified that appellant moved into the building in 1981. She stated that she performed duties for appellant which included typing the articles of incorporation for Stonemark International. Ms. Jackson identified some minutes from a meeting of the directors of Stonemark, which listed appellant as the chairman. Ms. Jackson stated that in 1982/1983, Commercial Funding put Stonemark's estate planning services on its computer. She claimed that Commercial Funding and ALEXCO were connected in that the same principles were involved in both companies. Ms. Jackson testified that Stonemark moved out of the building in

1983, but that appellant came by approximately four times a week to pick up checks payable to Stonemark from ALEXCO and Commercial Funding. Ms. Jackson admitted that the checks were loans, but she was unaware whether any of the loans had ever been repaid. Ms. Jackson also stated that appellant frequently delivered checks to her that were to be invested in a specific partnership or joint venture. Finally, Ms. Jackson noted that estate planning services had been performed for the same people that appellant brought checks in on.

Michael Mulligan testified that on December 31, 1984, he was elected president of ALEXCO. He testified that as president, he had custody of the financial and business records of ALEXCO and also some documents from Commercial Funding, which he claimed was a subsidiary of ALEXCO. Mr. Mulligan also stated that he possessed some books and records of Stonemark International. During Mr. Mulligan's examination of the records of the various corporations, he analyzed a Charlestown partnership. Mr. Mulligan testified that Charleston was a limited partnership created with ALEXCO as the general partner, and designed to build and construct an apartment complex in Edmond. He also discovered that the option for the land on which the apartments were to be built had expired in November 1984. Based on his examination of the records, Mr. Mulligan testified that it was his belief that the Yandas' check had been included among the investors of the Charleston Project. Mr. Mulligan stated that based on his investigation, he found that a relationship existed between ALEXCO, Stonemark and Charlestown. He had concluded that Stonemark was the money raising arm of ALEXCO, and that the majority of the money raised for Charlestown was raised through Stonemark. Mr. Mulligan testified that it was fairly apparent that since the Stonemark had no money at that time, money was coming back to the corporation and used in matters unrelated to the Charleston Project. He estimated that approximately 20 percent of the funding raised through Stonemark went back to Stonemark. Mr. Mulligan further testified

that on January 17, he received a telephone call from Glen Vance requesting that he meet Mr. Vance and appellant in the Liberty National Bank lobby. When he arrived, Mr. Vance and appellant had prepared cashier's checks and needed Mr. Mulligan to endorse them for ALEXCO. Mr. Mulligan testified that one of the checks was payable to appellant as his fee for developing the investor.

The Yandas both testified that they did not understand they would have to do anything as it related to the building of the project or the sale of same. They stated they signed papers but never received a copy of blank or signed papers. Glen Vance testified in actuality the investors had no managerial duties and he doubted if they were ever told that they had the right to exercise any control as it relates to the investment. Also, the court asked about the Yandas understanding as to what duty they had to assist in the management and again the parties stated they were not told of the right or duty to assist.

Several of the facts that stand out relating to this particular fraud come from testimony at the trial. It should be noted that the project never got off the ground and that the option to purchase the property expired and the land was not purchased. Further, Jesse Arvelos who went to work for Stonemark in 1982 as an auditor, testified that he worked closely with the appellant. He testified that the appellant found his customers from referrals or the county clerk's office and the land records. He further testified that he learned that typical customers were wealthy farmers. He further testified that as a part of the appellant's tax planning, he would suggest that the clients invest in a construction site or security. He stated that he never did an estate plan with the appellant where the clients were not also asked to invest in a project of some sort and further, that the appellant received a finders fee for putting money into these investments. Finally, the appellant's son, Rocky Probst, testified as to facts such as where his father obtained his clients, that is, as to referrals or from public courthouse records. Rocky stated

that he had worked in the business with his father who wanted to show him how the business was performed; further, that the appellant did not explain to his clients the relationships between the various companies. He also testified that the Charlestown Associates was a "hokey adventure to raise money".

The appellant then interposed a demurrer to the State's evidence, and, after receiving argument from both sides, the court determined that Counts I, II and III must be linked to a security and in order to bind appellant over, the Edmond Project had to be linked to the Charleston Associates, a Limited Partnership. After a recitation of its view of the evidence, the court ruled that there was insufficient evidence to connect the term "Edmond Project" and Charlestown Associates. On February 22, 1988, the Honorable Edward Cunningham, District Judge, reversed the ruling.

It is well-settled that the State is not required to present evidence sufficient to convict at the preliminary hearing, but rather, only has the burden to show that a crime was committed and probable cause to believe that the defendant committed the offense. *Johnson v. State*, 731 P.2d 424, 425 (Okl.Cr.1986). After a review of the evidence presented at the preliminary hearing, we find competent evidence in the record from which the district court could have reasonably concluded that the sale of an interest in Charlestown Associates Limited was a security. Accordingly, we find no error.

Appellant next contends that the trial court erred in overruling his demurrer and erred further in finding him guilty because there was insufficient evidence presented at trial to convict him of the charges in Counts I, II and III. Specifically, appellant argues that the evidence failed to prove that he offered for sale an interest in a limited partnership, i.e., Charlestown, but rather, the evidence proved the existence of a joint venture with ALEXCO to build an apartment complex.

When the sufficiency of the evidence presented at trial is challenged on appeal, this Court must determine whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985). Furthermore, we will accept all reasonable inferences and credibility choices that tend to support the trier of fact's verdict. *Williams v. State*, 721 P.2d 1318, 1320 (Okl.Cr.1986). The evidence presented at trial was essentially the same as presented at the preliminary hearing, with the notable exception of the testimony of Glen Vance, who covered in greater detail the preliminary hearing testimony of Michael Mulligan, who did not testify at trial.

Under 71 O.S.1981, § 301, the State was required to prove that a security had been offered or sold and that the security was neither registered with the Oklahoma Securities Commission nor qualified for an exemption. Initially, Charles Moore, an employee with the Oklahoma Department of Securities, testified that Charlestown Associates Limited was not registered with the Department of Securities nor had it claimed an exemption. Mr. Moore also testified that appellant had never been registered with the Department of Securities as a broker, dealer, agent or investment advisor. Thus, the question remaining is whether a security had been offered or sold.

Under 71 O.S.1981, § 2(20)(P), a security is defined as an investment of money or money's worth including goods furnished and/or services performed in the risk capital of a venture with the expectation of some benefit to the investor where the investor has no direct control over the investment or policy decision of the venture. In addition, under 71 O.S.1981, § 2(20)(K) an investment contract is a security. Both sides cite *Securities and Exchange Commission v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) as authority for the determination of whether the State proved the existence of an investment contract. The case involved the sale of units in a citrus grove development. The suit was brought by purchasers alleging violations of the securities act by the defen-

dants. In *Howey*, the Supreme Court listed the elements of an investment contract as: (1) an investment; (2) in a common enterprise; (3) with the expectation of a profit through the efforts of others. 328 U.S. at 298, 66 S.Ct. at 1103, 90 L.Ed. at 1249.

■ In the present case, there was clearly an investment of money as the Yandas gave appellant a check for $100,000.00. There was also a common enterprise, that being the Edmond Project, a/k/a, the Charlestown Apartments. The first dispute concerns whether the Yandas expected a profit. Appellant claims no; however, Mr. Yanda testified that if there was a profit when the apartments were sold, he did expect to receive a part of it. Mrs. Yanda testified that, while realizing a risk in any investment, she did expect some profit. It does not make common sense that a person would give away $100,000. An investment should presume an expected return or profit, although one is not guaranteed.

The security or investment in question in this case was an interest in a limited partnership in a real estate development. Limited partnership investments have been held by numerous courts to be securities. *Murphey v. Hillwood Villa Associates* (1976, S.D.N.Y.) 411 F.Supp. 287, a limited partnership as to ownership of rental housing; *Bartels v. Algonquin Properties, Ltd.* (1979, D.C.Vt.) 471 F.Supp. 1132, a limited partnership in a real estate venture; *Kroungold v. Triester* (1975, E.D.Pa.) 407 F.Supp. 414, a limited partnership interest in several real estate investments; *Siebel v. Scott*, (1984, C.A.5 Tex.) 725 F.2d 995, *cert. denied* 467 U.S. 1242, 104 S.Ct. 3515, 82 L.Ed.2d 823.

In a more recent Oklahoma case out of the 10th Circuit, the court held investments to be securities as it related to a real estate development venture. *McGill v. American Land & Exploration Co.* (1985, C.A.10 Okla.) 776 F.2d 923. Therefore, from a review of the cases, the vast majority of courts have held that the type of limited partnership involved herein constitutes a security. Even if as appellant contends, the interest offered was not a limited part-

nership, which is normally a per se security, still it could be a security under *Howey* and other law if the tests are met. The real question as it relates to a security rests with the third requirement of *Howey*, that is, the expectation of a profit "solely" through the efforts of others.

In this particular case, exhibit evidence was introduced that would indicate that the investors under the venture would have overall management and control of the business affairs. Such documents also indicated that no major decision would be made without approval of the venturers. If this court would adopt the strict interpretation of *Howey*, that is, the "solely" test, we could hold that the investment was not a security. The evidence clearly indicates that the investors were not informed of the document, nor did they have a copy of the document, nor did they in any way involve themselves in management. It would seem ludicrous to say that by inserting the "boilerplate" type wording, you could protect yourself from a securities violation. This, obviously, is not the spirit nor the intent of the law.

The third portion of *Howey* directed to profits through efforts of others is somewhat confusing, the trend since this decision is away from the "solely" test. It would appear since approximately 1970 that the modern trend has used a different test, that is, "substantially" through the efforts of others. *State v. Hawaii Mkt. Center, Inc.*, 52 Haw. 642, 485 P.2d 105 (1971). The courts have consistently allowed an investor to contribute some efforts and still the investment could be held to be an investment contract. *Le Chateau Royal Corp. v. Pantaleo*, 370 So.2d 1155 (Fla.App.1978). This trend probably started with the now famous Glenn Turner Pyramid scheme cases where, if held to the "solely" standard, there would never have been a conviction because the investors did perform some "efforts". *S.E.C. v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir.) *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

■ We are aware of the last definitive statement by the U.S. Supreme Court as it

relates to the *Howey* test. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). This case reiterates the *Howey* test but does not strengthen the "solely" doctrine. In fact, the court, referring to the *Glenn W. Turner* 9th Circuit case which holds to the new theory stated, "we express no view however, as to the holding in this case". Regardless of the position of the Supreme Court, it appears that the proper test today (both state and federal), need only be the "substantial" test and not the "solely" test. In a recent 5th Circuit case, the present trend of the courts becomes clear. *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.) *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The court said, starting at page 422 the following:

"[T]he mere fact that an investment takes the form of a general partnership or joint venture does not inevitably insulate it from the reach of the federal securities laws. All of these cases presume that the investor-partner is not in fact dependent on the promoter or manager for the effective exercise of his partnership powers. If, for example, the partner has irrevocably delegated his powers, or is incapable of exercising them, or is so dependent on the particular expertise of the promoter or manager that he has no reasonable alternative to reliance on that person, then his partnership powers may be inadequate to protect him from the dependence on others which is implicit in an investment contract.

Thus, a general partnership in which some agreement among the partners places the controlling power in the hands of certain managing partners may be an investment contract with respect to the other partners. *Pawgan v. Silverstein*, 265 F.Supp. 898 (S.D.N.Y.1967). In such a case the agreement allocates partnership power as in a limited partnership, which has long been held to be an investment contract. *See generally* 3 Bloomenthal, *Securities & Federal Corporate Law* § 2.12(2) (1979)."

The key question then, regardless of whether this is a limited partnership, a general partnership, or a joint venture, does not have as much to do with the form of the investment but has more to do with the substance. In these types of investments, all that should be required is that the promoter possess some particular or special skill which is necessary to the successful operation and/or management of the venture and a skill or knowledge that the investors do not have. The facts in this case are clear that the Yandas were not sophisticated investors, they did not have a specialized skill, and were, as they testified, relying upon the expertise of the appellant. For the appellant to use or to hide behind a document that grants authority that was not intended to be used or that was not used is not sufficient for an acquittal. Analogies would be the unskilled investing in an oil and gas venture, or, the unskilled investing in a cattle feeding or marketing operation. This court could go on and on as to types of investments but clearly the modern trend in holding an investment to be a security has now to do with the actual management. This Court specifically adopts the "substantial" or managerial approach rather than the "solely" approach. *Williamson v. Tucker, supra; Long v. Shultz Cattle Company*, 881 F.2d 129 (5th Cir.1989) (wherein the agreement between the parties provided that the investors would make the final decision); *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236 (4th Cir.1988). Also two excellent treatises by Professor Joseph C. Long of the University of Oklahoma can be found to explain this approach in detail. 1985 Blue Sky Law Handbook—Developments in State Securities Regulation, 2–33 through 2–44 and Blue Sky Law § 2.04(2)(d).

After a review of the record, we find sufficient evidence in which the trial court could have found the essential elements of the crimes charged beyond a reasonable doubt.

■ On May 4, 1988, five days before trial, the State filed an application seeking the trial court's permission to endorse and add the name of Glen P. Vance as a witness. The application was granted. A

hearing concerning the matter was held on May 5, 1988, wherein appellant presented an oral motion to strike the endorsement of Mr. Vance on the basis of unfair surprise and prejudice. At the hearing, the State averred that they first learned the whereabouts of Mr. Vance at 7:00 a.m. on May 3, 1988, and notified defense counsel by telephone as soon as the application had been signed by the court. Appellant claimed that the State was sandbagging the witness because they should have known how to locate a federal parolee sooner than five days prior to trial.

The endorsement of a witness on an Information may be permitted at any time in the trial court's discretion. *Rhodes v. State*, 695 P.2d 861, 863 (Okl.Cr.1985). Absent a showing of surprise or prejudice, no abuse of discretion will be found. *Id.* The gravamen of appellant's complaint concerned the State's failure to endorse Mr. Vance prior to the time that they did. However, at the hearing, counsel for defense specifically stated that he was not asking for a continuance. Moreover, the trial court recessed the trial on May 11, 1988, granting counsel for defense the better part of that day to visit with Mr. Vance. When the trial resumed the next morning, defense counsel stated, "[w]e had sufficient time to visit with the witness and the defendant is ready this morning for all purposes." We find no error. *See Fabian v. State*, 720 P.2d 1276, 1278 (Okl.Cr.1986). Counsel's recourse was to ask for a continuance; this he did not do, a complaint now is just too late.

In the same argument, appellant claims that with regard to Mr. Vance, the State failed to provide any exculpatory impeachment evidence concerning appellant. The issue of the State's obligation to provide exculpatory evidence was discussed thoroughly prior to Mr. Vance's testimony. When defense counsel requested three specific documents, the State provided a blank form copy of one and denied any knowledge or possession of the other two. In fact, a deputy administrator from the Securities Commission called the court and confirmed the fact that the documents were not in the State's possession. The record does not indicate, nor has appellant demonstrated, that the State failed to comply in any manner with the trial court's discovery order. We find no error.

■ In his final assignment of error, appellant contends that his sentences are excessive. However, the sentences imposed are within statutory limits, and we cannot say that the sentences shock our conscience. *Gaines v. State*, 724 P.2d 260, 262 (Okl.Cr.1986). We find no error.

The Judgments and Sentences are AFFIRMED.

LANE, Vice Presiding Judge, concurring in result:

I write to address the issue whether the investment Mrs. Yanda entered into is a security. Winnowing the relevant from the irrelevant facts of this case we are left with a rather simple scenario. As part of the estate planning the appellant performed for Mr. and Mrs. Yanda, he advised them regarding certain investments. Specifically he advised Mrs. Yanda to invest in an apartment project in Edmond, Oklahoma. The appellant told Mrs. Yanda there was no risk to her investment, and she believed him. She gave the appellant a check for $100,000.00 made payable to Alexco and designated for the "Edmond Project". She also signed, without reading it, a joint-venture agreement which provided in relevant part:

(a) The overall management and control of the business and affairs of the Joint Venture shall be vested in the Venturers, collectively ...

(c) No act shall be taken, sum expended, or obligation incurred by the Joint Venture, Manager or any Venturer with respect to any of the following matters (herein referred to as the "Major Decisions"), unless such Major Decisions have been approved by the Venturers.

This agreement did not correspond to her understanding of the investment as described by the appellant, for she testified as follows:

The Court: Were you ever told that you could have any kind of control over the building of the apartments themselves?

Mrs. Yanda: No.

The Court: Were you ever told that you could have some kind of control, or imput, (sic) into the management or running of Charlestown Associates Limited?

Mrs. Yanda: No ...

The Court: Was it ever your intention to enter into a joint venture with Charlestown Associates Limited? In other words you and your husband would work with Charlestown Associated Limited to Build the Apartments?

Mrs. Yanda: No.

The Court: Was it your understanding that you were investing one hundred thousand dollars in the Edmond project or the Charlestown Apartments?

Mrs. Yanda: Yes. I knew that ...

The Court: Did you ever have any involvement in the input into the filing of a return for Charlestown Associated Limited tax return?

Mrs. Yanda: No.

(Tr. 63–66).

Mrs. Yanda was, according to her own testimony, a woman naive in business matters. Glen Vance, President of Alexco, testified the investors in Charlestown Associates Limited assigned their managerial control to one person who conducted the business of the partnership.

I agree with the majority that Mrs. Yanda's investment is a security in the form of an investment contract. However, I prefer a less convoluted analysis to reach this result. Oklahoma applies the definition of an investment contract set forth by the United States Supreme Court in *SEC v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) under its own Securities Act. *State ex rel. Day v. Petco Oil & Gas, Inc.*, 558 P.2d 1163 (Okl.1977). *Howey* sets forth four elements of an investment contract. There must be an investment, in a common enterprise, with the expectation of profit, solely from the efforts of others. 328 U.S. at 298, 66 S.Ct. at 1103.

As new schemes came before various state and federal courts, the element "solely from the efforts of others" proved to be too limited, for in many schemes the investors performed some minor task which contributed to their expectation of profit. The courts modified the definition of an investment contract by defining what efforts an investor could undertake and still be entitled to the protection of the securities acts.

The majority follows those jurisdictions which adopted a test of "substantially" through the efforts of others. I find this test to raise more questions than it answers. How substantial must "substantial" be? Certainly this question is not answered in the present case, for Mrs. Yanda put forth no effort in the enterprise beyond her substantial investment. More importantly, I believe the better analysis is to examine the quality of the investor's efforts rather than the quantity.

I agree with those jurisdictions which look to management efforts or economic reality and hold that an investment is a security if the investor does not have managerial control of the enterprise. *See State v. Hawaii Market Center*, 52 Haw. 642, 485 P.2d 105 (1971); *Sauer v. Hays*, 36 Colo.App. 190, 539 P.2d 1343 (1975); *Activator Supply Co. v. Wurth*, 239 Kan. 610, 722 P.2d 1081 (1986); *State v. Duncan*, 181 Mont. 382, 593 P.2d 1026 (1979); *Prince v. Heritage Oil Co.*, 109 Mich.App. 189, 311 N.W.2d 741 (1981); *Ohio v. George*, 50 Ohio App.2d 297, 362 N.E.2d 1223 (1975); *Pratt v. Kross*, 276 Or. 483, 555 P.2d 765 (1976). Even the Supreme Court suggested it did not disagree with this modification of the *Howey* test. *See United Housing Foundation v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

To apply this test I would look to an investor's actual managerial or entrepreneurial efforts, as well as what managerial or entrepreneurial control was available to the investor if he or she desired to exercise it. Access to information regarding the business involved is a critical factor here since inherent in the ability to exercise managerial control, of course, is the investor's actual access to necessary facts. *See Maritan v. Birmingham Properties*, 875 F.2d 1451 (10th Cir.1989).

The case before us raises the importance of an additional factor to examine in determining whether to categorize an investment as an investment contract. This is the investor's practical ability to exercise any managerial control.

When the Fifth Circuit addressed this issue it explained:

[T]he mere fact that an investment takes the form of a general partnership or joint venture does not inevitably insulate it from the reach of ... securities laws. All of these cases presume that the investor-partner is not in fact dependent on the promoter or manager for the effective exercise of his partnership powers. If, for example, the partner has irrevocably delegated his powers, or is incapable of exercising them, or is so dependent on the particular expertise of the promoter or manager that he has no reasonable alternative to reliance on that person, then his partnership powers may be inadequate to protect him from the dependence on others which is implicit in an investment contract.

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981) *cert. denied* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). I agree whole heartedly with this reasoning and believe strongly that it is essential for this Court to examine the substance in fact as well as the form of an investment in determining whether it is a security in the form of an investment contract.

This analysis squares with the purpose of the State Securities Act which is to protect people from schemes, such as the one considered here, which defraud the public. I intentionally have avoided a strict contractual approach in which the four-corners of the agreement control absent ambiguity, or fraud in the inducement. To impose a strict contractual interpretation would insulate clever schemers from criminal responsibility and fail to provide protection to victims such as Mrs. Yanda. The end result would be a complete emasculation of the securities laws.

Applying this analysis to the facts at hand, the joint-venture agreement indicates the investment is not a security for Mrs.

Yanda is granted managerial control of the project. However, in fact she exercised no managerial control for she had no opportunity, no access to essential information, and no personal ability to do so. Therefore, giving weight to the substance of the investment over the form, I would find the investment is a security in the form of an investment contract under 71 O.S.1981, § 71(20)(K).